ESTATE OF DUNLAP: SPRAIN, Administrator, Appellant, vs. GIBSON ICE CREAM COMPANY, Respondent.

*April 10—June 23, 1924.*

*Executors and administrators: Claims arising in course of administration: Refusal of administrator to account for assets coming into his hands: Jurisdiction of county court: Mortgage of stock of goods: Conveyance absolute in form as security for future advances: Validity: Administrator representing adverse interests.*

1. An administrator inventoried property as that of his decedent, applied for permission to sell and did sell it, and a year later, upon filing his final account, only accounted for one·half the proceeds, claiming the rest belonged to a bank of which he was president, under a bill of sale given by deceased to secure an indebtedness to such bank. *Held,* that such an assertion by an administrator is one clearly arising in the settlement of the estate and necessarily for the determination of the county court, which has jurisdiction to hear and dispose of the controversy. p. 349.

·2. A chattel mortgage in the form of a bill of sale of an undivided one-half interest in all the furniture and fixtures of a restaurant and of "all the stock now in and in the future to be bought and kept as stock," which last mentioned item formed but an insignificant part of the security, is *held* not to come

within the requirements of sec. 2314, Stats., as to filing with the register of deeds, or of sec. 2316*b*, as to affidavits regarding subsequent sales. p. 350.

3. Where said chattel mortgage on the stock and fixtures was an existing lien at the time of the owner's death, and the administrator took possession and sold the property, and a lien therefore attached to the proceeds of such sale, it was unnecessary for a mortgagee to take possession under the instrument as against the administrator or other creditors. p. 350.

4. As between the parties thereto, a conveyance of personal property absolute in form may be shown to be as security for future advances, but an agreement to that effect must be a present part of the security and cannot arise by a subsequent oral agreement. p. 351.

5. Where the bill of sale expressed as the consideration thereof the exact amount of a loan then made and was silent on its face, and there is no evidence as to any then intent that it should be security for more than that amount, it could not, by the mere expression of such intent in notes subsequently executed, be deemed to include such notes. p. 351.

6. Where the administrator of decedent's insolvent estate was also the president of a bank which was a large creditor of decedent, he should not have continued as administrator while asserting as president a claim to a substantial preference for his bank. p. 352.

APPEAL from an order of the county court of La Crosse county: JOHN BRINDLEY, Judge. *Reversed.*

The deceased, E. R. Dunlap, kept a restaurant at West Salem in said county and borrowed at various times considerable sums of the West Salem State Bank, of which the appellant, *George D. Sprain,* was president. Dunlap was killed April 23, 1921. Upon petition by his widow said *Sprain* was appointed special administrator on April 29th and subsequently administrator. Dunlap was insolvent, and claims largely in excess of the assets were filed. The *Gibson Ice Cream Company,* respondent here, one of such creditors, as such objected to the final account of said administrator.

In June, 1919, and August, 1920, Dunlap gave his notes to the said bank for $3,000 and $1,000, which with other

notes to the bank were paid by the widow out of life insurance.

October 13, 1920, Dunlap borrowed from the bank $1,000 and gave his note. At the same time he executed and delivered to *Sprain* a bill of sale of an undivided one-half of all furniture and fixtures and "of all the stock now in and in the future to be bought and kept as stock" in the said restaurant. This instrument recited a consideration of $1,000 and was filed with the village clerk but not with the register of deeds. It is undisputed that this instrument was only intended as security for the bank. In December another note for $750; January, 1921, another for $100, and in February another for $400, were also given by Dunlap to the bank. Each of these three notes recited above the signature that each had as collateral security a certain $5,000 note of one Foss and "bill of sale to *Geo. D. Sprain*," thereby referring to the above mentioned bill of sale. Nothing had been paid on these four notes, aggregating $2,250, by Dunlap.

*Sprain* took possession of the restaurant immediately after Dunlap's death. *Sprain* promptly filed an inventory. The appraised value of the personal property, outside of two promissory notes, was fixed at $2,628.86. A little over $2,000 of this was for the furniture, fixtures, dishes, and utensils in connection with the restaurant; the balance was for fruits, cigars, candies, etc.

June 8, 1921, *Sprain* as administrator made application to the county court for leave to sell such personal property to pay the debts and expenses. The fact that the bank claimed an interest in such property under the aforesaid bill of sale was in no manner mentioned in either inventory or petition nor until the filing of his final account.

In July, 1921, a sale was made of such personal property for $4,800. In September a claim was filed by the bank against the estate for $4,000, but subsequently withdrawn without any action by the court having been taken.

In July, 1922, *Sprain's* final account was filed. Therein he charged himself with having received but $2,400 as of July, 1921, instead of the $4,800, and now reciting that the same was the "sale of an undivided one-half interest of stock and fixtures of E. R. Dunlap restaurant."

Objections were made to such account, and after hearing it was held by the county court, in substance, that the said bill of sale was invalid so far as other creditors were concerned and that *Sprain* must account to said estate for the entire $4,800 as proceeds of the sale, instead of merely the $2,400. He testified that he used the other $2,400 in paying the notes aforesaid, aggregating $2,250, held by the bank, for which he had acted in the various transactions.

From the order or judgment based upon the findings the administrator appealed.

For the appellant there were briefs by *Lees & Bunge* of La Crosse, and oral argument by *George W. Bunge.*

For the respondent there was a brief by *Mahoney & Schubert* of La Crosse, and oral argument by *Paul W. Mahoney.*

ESCHWEILER, J. *Sprain* as administrator and appellant insists that the county court was without jurisdiction to hear and dispose of this controversy; this being, so he claims, a contest in which are involved the rights of the West Salem State Bank, claiming a lien by reason of the bill of sale of October, 1920, and to which he paid the $2,400, one half of the proceeds of the sale of the personal property, and that the bank is not and could not be a party in the probate proceedings. In other words, that to properly determine such issues some form of action must be brought in some other court and one having civil, as distinguished from probate, jurisdiction.

This matter, however, was very properly before the county court for disposition upon the administrator's final account and the prior proceedings. He had inventoried the property

as that of the deceased and made application to sell it as such, and a year after such sale by him as administrator he then first asserts that he will only account to the estate for one half instead of the whole of the proceeds. Such an assertion by an administrator is clearly one arising in the settlement of the estate and necessarily for the determination of the county court. If the bank has improperly received funds belonging to the estate, it is because *Sprain*, while acting as administrator, paid them to the bank.

For such improper disposition of the funds, if it be improper, those interested in the estate need, for the present at least, seek no further relief than as against the administrator and his bond. As such administrator he clearly exercised his paramount right to the possession of this property. *State ex rel. Peterson v. Circuit Court*, 177 Wis. 548, 554, 188 N. W. 645. And as such administrator he must account to the county court for all of his doings with the same.

The position of the court below and of respondent is that the bill of sale of October 13, 1920, by Dunlap to *Sprain*, concededly a chattel mortgage to the bank, was not valid as against the other creditors of Dunlap because, first, it including goods and merchandise from which sales were made, it was not filed with the register of deeds under sec. 2314, Stats., and no subsequent written statements of such sales were made or filed pursuant to sec. 2316*b;* and second, that no possession of such property was taken by the bank under such instrument, either before or after Dunlap's death, and no affidavit as to the sale was ever filed under the provisions of sec. 2316*c*.

The trial court was of the opinion that the stock kept for sale was "not large," but no finding as to the actual amount thereof was made, though a request to that effect was presented. The record shows that the furniture and fixtures were a very substantial part of the security given by the instrument of October 13th and the stock of goods but an insignificant portion.

In view of the ultimate disposition we are making of this matter in allowing but $1,000 as a proper payment, to the bank, and such amount being far more than covered by the security given on the furniture and fixtures, aside from the stock, we hold, following our recent decision subsequent to the hearing below, upon similar language in the Bulk Sales Law, in *Missos v. Spyros,* 182 Wis. 631, 197 N. W. 196, that such an instrument did not come within the requirement of either of the two statutes, secs. 2314 or 2316*b,* *supra,* and did not require a filing with the register of deeds, or of affidavits as to subsequent sales. It follows that the rulings of the trial court in that regard were incorrect.

The instrument of October, 1920, being thus held to be a valid chattel mortgage, it was therefore an existing lien on the property at the time of Dunlap's death, and it remained such lien at the time *Sprain* took possession as administrator and was such at the time of the sale. After the sale under these circumstances the lien remained as a valid one upon the proceeds derived from such sale. There was no need, therefore, of the bank taking possession under such instrument as against the administrator or other creditors; and the second ground of the trial court and respondent, under sec. 2316*c, supra,* as above stated, must also be set aside.

The bill of sale or chattel mortgage in question here expressed on its face a consideration of $1,000, the amount of the loan then made and note then given. It contains no language indicating a then intention that it should include or secure future and additional loans or transactions. There is no evidence showing that there was then any agreement that it should include or secure such.

In making payment to the bank of the $2,400 the administrator added to the $1,000 loan of October 13, 1920, the sum of $1,250, the aggregate of the three several subsequent notes, on each of which, over Dunlap's signature, appeared the statement that each had as collateral security the said bill of sale. Nothing, however, in shape of constructive

notice by the filing of additional documents or of actual notice to other creditors of any attempt or intention to enlarge the scope of the instrument of October, 1920, appears.

That as between the parties thereto such a conveyance, absolute on its face, may nevertheless be shown to be as security for future advances has been long and often recognized in this state. *Fisher v. Otis,* 3 Pin. 78, 90; *Evenson v. Bates,* 58 Wis. 24, 15 N. W. 837; *Shores v. Doherty,* 65 Wis. 153, 157, 26 N. W. 577; *Lippincott v. Lawrie,* 119 Wis. 573, 575, 578, 97 N. W. 179; *Evans v. Evans,* 173 Wis. 141, 148, 179 N. W. 755. But in those cases as well as in other authorities discussing the subject it is clearly recognized that the agreement for security for future advances must be a present part of the instrument relied upon for such security. It cannot arise by some subsequent oral agreement. 19 Ruling Case Law, 393; Jones, Chat. Mortg. (5th ed.) p. 148; Ann. Cas. 1913C, note at p. 561; *Keese v. Beardsley,* 190 Cal. 465, 213 Pac. 500, 26 A. L. R. 1538, 1542; 1 A. L. R., note at p. 1586.

The agreement of October 13th, expressing as the consideration thereof the exact amount of the loan then made, and being silent on its face and under the evidence as to any then intent that it should be security for more than that amount, cannot, by the mere expression in the three notes of the following December, January, and February of subsequent intention to have them so included, be now held to have such retroactive effect. Upon the record here, therefore, the West Salem State Bank had at the time the administrator sold in July, 1921, a valid lien upon the furniture and fixtures to the extent of the $1,000 note with the accrued interest according to its tenor, and to no greater sum.

To that extent, then, and no more, the administrator was bound to and might recognize the claim and title of the bank in and to the proceeds of such sale. *Merrill v. Comstock,* 154 Wis. 434, 437, 143 N. W. 313. For all over such amount he must be held accountable in this proceeding.

The trial court very properly and forcibly commented upon the impropriety of the appellant continuing to act as administrator while there was conflict between his duty as such and his interest and duty as president of the bank, a large creditor of the·deceased.   Here the conflict of duties was such that appellant ought not to have continued as administrator of an insolvent estate while asserting as president a claim to a substantial preference for his bank.   This subject of adverse and conflicting interests in the administering of estates has been recently fully discussed in an opinion by Mr. Justice Jones in *Will of Zartner,* 183 Wis. 506, 198 N. W. 363, and we need add nothing more. Whether this situation should affect the question of his allowance for fees is not now before us.

*By the Court.*—Order reversed, and cause remanded for further proceedings as directed in the opinion.