MARSHALL & ILSLEY BANK, Appellant, vs. EWIG, Respondent.

*January 10—February 7, 1939.*

354

For the appellant there were briefs by *Churchill, Bennett, Churchill & Davis,* and oral argument by *Joseph E. Rapkin,* all of Milwaukee.

*Walter Schinz, Jr.,* of Milwaukee, for the respondent.

FRITZ, J. The following facts were found by the court in part upon evidence which is undisputed, and in part upon evidence which warranted the court's findings by the great weight and clear preponderance thereof. The note and mortgage in question were executed on August 26, 1925, by the defendant, Martha Ewig, to the plaintiff, as payee and mortgagee, and delivered to it on August 29, 1925, by her husband, William Ewig, as collateral security for indebtedness then existing on his part to the plaintiff. The mortgage lien was on a house and lot (hereinafter called the "Walnut street property"), which was deeded to the defendant on May 27, 1925, by Isadore Dornert and wife, and was paid for by means of her separate money, most of which she had acquired from sources other than her husband or his earnings, and had saved during the years prior, as well as subsequent, to her marriage forty years ago. She reserved and exercised such measure of control over that property as was consistent with her ownership thereof as her separate estate, and did not give any general power of attorney or authority to sell, mortgage, or otherwise dispose of her separate property without her signature or conveyance. In executing the note and mortgage in question, the parties intended that the collateral should stand for the repayment by William Ewig of the money which he then borrowed from the plaintiff. No future or additional loans were then in the contemplation of the parties, and no continuing guaranty to the plaintiff to cover any future or additional loans was required of, or signed by the defendant. By December 10, 1928, William Ewig had fully paid and discharged his indebtedness to the

plaintiff, and it returned the note and mortgage to him with a satisfaction thereof executed by the bank, which he retained without recording. On February 19, 1929, the plaintiff made a new loan of $1,800 to William Ewig upon his individual note; and to collateralize that loan, he, without any writing or other authority from the defendant, or her knowledge, direction, or consent, redelivered her $3,200 note and mortgage, and the satisfaction thereof, to the plaintiff. That new loan of $1,800 was paid and discharged by William Ewig on June 17, 1929, and the bank again returned to him the defendant's $3,200 note and mortgage, with a satisfaction thereof executed by the bank, which he again retained without recording. On September 30, 1929, the plaintiff made another loan of $1,500 to William Ewig upon his individual note, and to collateralize that loan he again delivered defendant's $3,200 note and mortgage and the second satisfaction thereof to the plaintiff, without any new mortgage or other writing or authority from her, or her knowledge, direction, or consent. That loan of $1,500 was never repaid, but was increased to over $6,000 by additional loans made from time to time to William Ewig, and the defendant's note and mortgage remained in the plaintiff's possession without her knowledge or consent. None of the attempts to revive defendant's note and mortgage for the purpose of collateral, as stated above, was accompanied by any request to the defendant to execute a new note or mortgage, or any other writing to revitalize the note and mortgage of August 26, 1925, and no such instrument was ever executed by her.

The facts thus found warranted the court's conclusion that William Ewig's discharge of his debt to the plaintiff on December 10, 1928, and the plaintiff's satisfaction of the defendant's note and mortgage of August 26, 1925, then extinguished and canceled her obligation to the plaintiff, and her mortgage as security therefor, and that her note and

mortgage ceased to have legal existence upon and after the discharge and satisfaction thereof on December 10, 1928. The extinguishment of William Ewig's indebtedness on December 10, 1928, likewise extinguished on that date the defendant's obligations under her note and mortgage, which had been given for his accommodation as collateral security for but that indebtedness. As this court has said, "a mortgage is not property at all independent of the debt it secures. The extinguishment of the debt *ipso facto et eo instante* extinguishes the mortgage." *Fred Miller Brewing Co. v. Manasse,* 99 Wis. 99, 102, 74 N. W. 535; *Cumps v. Kiyo,* 104 Wis. 656, 659, 660, 80 N. W. 937.

However, the plaintiff contends that William Ewig was the owner of the Walnut street property, which was covered by the mortgage, and that by his acts he effectually revived the mortgage lien. Those contentions, based as they are upon plaintiff's claim that William Ewig was the owner of that property, cannot be sustained. The court's findings that the property was acquired by the defendant by her separate means, and deeded to and held by her as her separate estate, are warranted, as stated above, by the great weight and clear preponderance of the evidence, and, consequently, cannot be set aside on appeal. *Interior Woodwork Co. v. Buhler,* 207 Wis. 1, 6, 238 N. W. 822. Plaintiff does not claim that the transaction by which the property was acquired and deeded to defendant was fraudulent or that title was taken in her name with intent to hinder, delay, or defraud future creditors of her husband. Under the circumstances, even if he had contributed part of the purchase price, or her savings were made in part out of allowances to her for household expenses, he, while solvent, had the right, as against subsequent creditors, to make a gift thereof to her. *Dockry v. Isaacson,* 187 Wis. 649, 205 N. W. 391. Because he was not the owner of the mortgaged property, and was not a party to the mortgage, there is no basis for applying the

proposition asserted by plaintiff that a mortgage though paid or satisfied may be kept alive or revived by an oral agreement of the parties thereto. Even if that may be the rule under some circumstances, in respect to an agreement to that effect made between the parties to a mortgage, that rule would not be applicable herein because there is no factual basis for finding any such agreement was ever made between the defendant and the plaintiff. On the contrary, the evidence established, as the court found, that the parties intended that the note and mortgage should stand as collateral for only the loan made to William Ewig in August, 1925; that no future or additional loans were then in the contemplation of the parties, and no continuing guaranty to the bank to cover such loans was required of or signed by the defendant; and that the redeliveries to the plaintiff of the note and mortgage, and its satisfaction thereof, to collateralize subsequent loans, after those instruments had been delivered to him upon his discharge of the indebtedness incurred in August, 1925, were without the defendant's knowledge or consent, or any request to or any new writing or authority from her.

But, it is further contended by the plaintiff that the defendant, by acquiescence and failure on her part to disaffirm after adequate notice thereof, or by retaining benefits with full knowledge of the facts, authorized or ratified the subsequent pledge and revived the mortgage as security for indebtedness incurred by William Ewig subsequent to the indebtedness discharged on December 10, 1928. The contention that the revival of the mortgage as security for indebtedness incurred subsequent to that which William Ewig discharged on December 10, 1928, was authorized by the defendant, cannot be sustained in face of the facts, as found by the court, that no future or additional loans were in contemplation of the parties when the note and mortgage were given to collateralize the first loan in August, 1925; that no

continuing guaranty to cover any such future or additional loans was required of, or signed by, the defendant; and that when William Ewig redelivered that note and mortgage to collateralize new loans in February and in September, 1929, respectively, he did so without any writing or authority from her or her knowledge or consent.

Neither does the record sustain plaintiff's contention that the defendant ratified William Ewig's repledging of the note and mortgage in September, 1929, by her acquiescence therein and failure to disaffirm the transaction after adequate notice thereof. In making that contention, the plaintiff claims that the defendant was informed of and consented to that repledging of the note and mortgage, when she was at the plaintiff's bank on December 27, 1929, to join with her husband in signing a note for $6,500 secured by a mortgage on property on Forty-Sixth street, which were then given to refinance an indebtedness of $7,500 on their joint note to the plaintiff. Plaintiff bases that claim upon the testimony of one of its officers that he told the defendant on December 27, 1929, that the difference of $1,000 between the amount of the new note for $6,500 and the amount of the refinanced note for $7,500 was being charged against the personal loan account of William Ewig, who was giving his note for $1,000, payable in eight days, and that to secure the latter the defendant's note and mortgage of August 26, 1925, would be held as collateral. The officer also testified that the defendant "thought the arrangement was O. K." However, on the other hand, all of the alleged facts thus testified to by the officer were denied by the defendant in her testimony, and in relation to the resulting issues the court found,—

"At the time of the consummation of the transaction of December 27, 1929, . . . the defendant . . . did not know, nor was she then or previously informed, that said plaintiff bank held, or claimed to hold, the $3,200 note and mortgage

of August 26th, 1925, as collateral security for the remaining $1,000 mentioned in said finding 15, or for any other debt or obligation of said William Ewig to said plaintiff, and that said defendant . . . did not by any act or omission on her part revive said note and mortgage nor did she induce said plaintiff bank to change its position for the worse by accepting the individual note of William Ewig for said $1,000 balance."

As those findings are not against the great weight and clear preponderance of the evidence, they must be permitted to stand. Moreover, as is argued in the defendant's brief, the fact that the $1,000 note given on December 27, 1929, for the balance of the $7,500 indebtedness was signed by William Ewig alone, supports the defendant's claim that she was not informed thereof. If, as the bank claims, she was present when that note was signed by her husband, why was she not asked to sign it, or to make an indorsement on her $3,200 note and mortgage consenting to a revival thereof, or to make a new mortgage? The answer may well be, as the defendant contends, that she was never consulted in that regard, although she was present to sign the new $6,500 note and mortgage. Furthermore, the evidence warranted the court's finding that subsequently when the bank, on December 7, 1933, obtained a quitclaim deed from William Ewig and the defendant conveying their equity in the Forty-Sixth street property, and surrendered their note of December 27, 1929, for $6,500, and satisfied the mortgage securing that note, the plaintiff likewise did not apprise the defendant of any claim on its part to hold and enforce her note and mortgage of August 26, 1925, as collateral security for any debt or obligation of William Ewig, or that the same had been revived, or were then held by the plaintiff for that use or purpose. It follows that the record does not support the plaintiff's claim that the defendant was informed of and consented to the repledging of her $3,200 note and mortgage on December 27,

1929. Neither does the record otherwise sustain plaintiff's contention that the defendant had notice or knowledge prior to the commencement of this action, that her note and mortgage of August 26, 1925, had been repledged. On the contrary, the facts found by the court, as stated above, warranted its conclusion that "the defendant never ratified any of the acts of William Ewig, or transactions between him and the plaintiff, relied upon by the latter as sufficient to revive or revitalize said note and mortgage of August 26, 1925, after the same had been satisfied."

It is furthermore contended by the plaintiff that the repledging of the defendant's note and mortgage by her husband was ratified by her by reason of the retaining of benefits by her with full knowledge of the facts. That contention is based upon plaintiff's claim that she was benefited or enriched by the above-mentioned transaction on December 27, 1929, by which the indebtedness of $7,500 on a note signed by her and William Ewig was refinanced by their joint note and mortgage for $6,500, and her husband's note for $1,000. The $6,500 note and the mortgage on the Forty-Sixth street property, which they then executed, were given to the plaintiff, as trustee of a certain trust, in consideration of $6,500 of the funds of the trust estate which the plaintiff credited upon the indebtedness of $7,500, which was being refinanced. At that time the Forty-Sixth street property was evidently adequate security for the loan of $6,500 of trust funds. The officer in charge for the plaintiff, as trustee, testified, "the reason for reducing the amount of the $7,500 mortgage to $6,500 was that the appraisal made on that property of $13,000 warranted the trust department in making only a fifty per cent loan." As the value of the property on the basis of that appraisal greatly exceeded the $6,500 loan secured by the mortgage, it is obvious that the Ewigs had a substantial equity therein. Within four months the plaintiff,

on April 16, 1930, purchased that note and mortgage; and on December 7, 1933, the plaintiff obtained a quitclaim deed executed by William Ewig and the defendant and conveying their entire equity in the property in consideration of the surrender to them of their note for $6,500. Thus, the bank became the owner of the property without the Ewigs receiving anything for their equity. Under those circumstances, in the absence of proof that the value of that property is not equivalent to the amount of the $7,500 note formerly secured by a mortgage thereon, or that the plaintiff cannot realize on William Ewig's note for $1,000, it would seem that the plaintiff, rather than the defendant, will be benefited or enriched by their transactions on December 27, 1929. At all events, the evidence does not establish that the defendant was benefited or enriched by that transaction; and, consequently, there is no basis for concluding that the repledging of her note and mortgage by her husband must be deemed to have been ratified by her by reason of her enrichment or retention of benefits derived by her from his transactions with full knowledge of the facts.

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.