**In re CARLEY CAPITAL GROUP, James E. Carley, David Carley, Debtors.**

**Bankruptcy Nos. MM11-89-00587 to MM11-89-00589.**

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 8, 1990.

Paul A. Lucey, Godfrey & Kahn, Milwaukee, Wis., for debtors.

Michael B. Van Sicklen, Foley & Lardner, Madison, Wis., for First Wisconsin Nat. Bank.

Susan V. Kelley, Murphy & Desmond, S.C., Madison, Wis., for Creditors Committee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

The material facts are not in dispute. At all relevant times debtors James and David Carley have been the owners of the Sauk County farm which is the subject of this litigation. In the Fall of 1989 a portion of the farm was sold, under court order, with liens attaching to the $125,000.00 sale proceeds. The remaining portion of the farm is still titled in the Carleys' names. First Wisconsin National Bank of Madison (the "Bank") has moved for recovery of the sale proceeds. The Creditors Committee of Carley Capital Group (the "Committee") has opposed the Bank's motion on the basis that the Bank's mortgage is either invalid, or avoidable pursuant to 11 U.S.C. § 544(a).

On August 8, 1979 the Carleys executed and delivered to the Bank the mortgage ("the mortgage") on the Sauk County farm. The mortgage was recorded in the office of the Sauk County Register of Deeds. The obligation secured was described in the mortgage as "a loan by Mortgagee to Mortgagor as evidenced by Mortgagor's Mortgage Note bearing even date herewith in the principal sum of Two Hundred Thousand and No/100 Dollars ($200,000.00)...." The mortgage further provided that upon payment in full of the note and full performance of the obligations under the note and mortgage "the Mortgaged Property shall revert to Mortgagor and Mortgagee shall forthwith execute and deliver to Mortgagor an appropriate instrument of release, satisfaction and discharge."

Actually the Carleys did not execute a $200,000.00 note on August 8, 1979. Rath-

er, the Carleys and their two partners executed two irrevocable letters of credit, dated August 8, 1979, in the amounts of $105,-000.00 and $175,000.00, in conjunction with two undated notes, bearing the respective amounts. The notes bore a written indication that they were secured by the mortgage. Both letters of credit were to expire on July 31, 1981. The $175,000.00 letter of credit was amended to expire on November 30, 1981, and the $105,000.00 letter was amended three times, ultimately to expire on September 30, 1983. The letters were not drawn upon at any time before their expiration.

The Carleys entered into other transactions with the Bank at various times before and after September 30, 1983, and orally agreed that the Sauk County farm would serve as security for other obligations to the Bank. Accordingly, the Bank sent the Carleys an October 18, 1983 letter confirming this understanding. Not until February 20, 1984 did the Carleys and Carley Capital Group execute a cross-collateralization agreement under which the mortgage was listed as security for other obligations to the Bank. The cross-collateralization agreement was filed with the Wisconsin Secretary of State but was not recorded with the Sauk County Register of Deeds. A similar 1988 cross-collateralization and cross-default agreement also listed the Sauk County farm as security for obligations to the Bank, but was not signed by David Carley and was not filed with either the Secretary of State or the Sauk County Register of Deeds.

It will be assumed for purposes of this opinion that the mortgage identified the $105,000.00 and $175,000.00 notes with reasonable certainty. Those notes are thus assumed to be the obligation secured by the mortgage.

The mortgage provided that upon full performance of the obligations it secured, the property would revert to the Carleys, and the Bank would deliver to the Carleys an instrument of release, satisfaction, and discharge. Although both letters of credit had expired, unused, by September 30, 1983, the Bank did not deliver such an instrument to the Carleys.

The initial question is whether the mortgage was discharged upon the expiration of the letters of credit and the attendant satisfaction of the related notes. Then we must determine whether by operation of the mortgage contract the property reverted to the Carleys, in the absence of the Bank's written satisfaction of the mortgage. In *Moore v. Benjamin*, 228 Wis. 591, 594, 280 N.W. 340 (1938), the court stated:

> The indebtedness to which the mortgage was incident having been satisfied, the mortgage ceased to exist. Authorities are in general accord with the proposition that payment of an indebtedness on a note secured by a mortgage on real estate extinguishes the mortgage lien without satisfaction thereof of record or in writing.

(citation omitted). *See also Marshall & Ilsley Bank v. Ewig*, 230 Wis. 353, 357, 283 N.W. 795 (1939); *Connor v. Connor*, 218 Wis. 336, 343, 259 N.W. 729 (1935). It would thus appear that the mortgage was extinguished, and the property reverted to the Carleys, when the second letter of credit expired on September 30, 1983.

The parties dispute the effect of the interval between the expiration of the $105,-000.00 letter of credit on September 30, 1983 and the execution of the cross-collateralization agreement on February 20, 1984. The Committee argues that when the letter of credit expired, the mortgage lien was instantly extinguished, and that in order to revive the lien, the Bank was required to file a new mortgage or an amendment to the mortgage in the office of the Sauk County Register of Deeds. The Bank asserts that the mortgage remained valid because there never existed a time without underlying indebtedness due to the parties' oral agreement, predating the expiration of the letter of credit, for which the mortgage was to serve as security.

The Bank cites in support of its position *Krugmeier v. Hackett*, 134 Wis. 57, 113 N.W. 1103 (1907). The *Krugmeier* court stated as an initial matter that "... as a

strict rule governing legal rights, the payment of a debt secured by a mortgage extinguishes the mortgage completely, and ... such mortgage cannot be revived and become a valid lien upon real estate without the formalities required by law for the execution of mortgages." *Id.* at 60, 113 N.W. 1103. The court thereafter determined that the "strict rule" did not apply under the facts before it, and allowed the continued existence of a mortgage which "had become extinguished in law so that it no longer constituted a lien upon the land enforceable by defendant." *Id.* In *Krugmeier,* the mortgagor, the mortgagee, and the bank all agreed that after paying the amount of the mortgage debt owed by the mortgagor to the mortgagee, the bank would take over and continue to carry the debt previously owed to the mortgagee and secured by the mortgage, and the mortgage would not be satisfied or extinguished but would continue as security for that debt. *Id.*

■ The facts of our case may be distinguished from those of *Krugmeier.* *Krugmeier* involved a contemporaneous assignment of a mortgage and mortgage debt as part of a transaction in which the mortgagee was paid the amount of the mortgage note, and the mortgagor's account was charged as if having received a loan in the amount of the mortgage note. Our case does not involve assignment of the mortgage debt, be it the letters of credit originally secured by the mortgage, or one of the obligations secured in the later-executed cross-collateralization agreements. Furthermore, even if the parties intended that the mortgage secure other of the Carleys' obligations to the Bank, approximately five months elapsed between the expiration of the $105,000.00 letter of credit on September 30, 1983, and execution of the first cross-collateralization agreement on February 20, 1984. Under these circumstances, there is no reason to depart from the standard rule that a mortgage completely extinguished by payment of the debt secured thereby "cannot be revived and become a valid lien upon real estate without the formalities required by law for the execution of mortgages." *Id.*

Wis.Stat. § 706.02 sets out the formal requisites for the conveyance by mortgage of an interest in land.[1] Pursuant to Wis. Stat. § 706.02(1)(c), in order to be valid, a conveyance must identify "the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered." "The burden of specifically proving the indebtedness secured by the mortgage is

1. Wis.Stat. § 706.02 provides:

   (1) Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:

   (a) Identifies the parties; and
   (b) Identifies the land; and
   (c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered; and
   (d) Is signed by or on behalf of each of the grantors; and
   (e) Is signed by or on behalf of all parties, if a lease or contract to convey; and
   (f) Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) except conveyances between spouses, but on a purchase money mortgage pledging that property as security only the purchaser need sign the mortgage; and
   (g) Is delivered. Except under s. 706.09, a conveyance delivered upon a parol limitation or condition shall be subject thereto only if the issue arises in an action or proceeding commenced within 5 years following the date of such conditional delivery; however, when death or survival of a grantor is made such a limiting or conditioning circumstance, the conveyance shall be subject thereto only if the issue arises in an action or proceeding commenced within such 5-year period and commenced prior to such death.

   (2) A conveyance may satisfy any of the following requirements of this section:

   (a) By specific reference, in a writing signed as required, to extrinsic writings in existence when the conveyance is executed; or
   (b) By physical annexation of several writings to one another, with the mutual consent of the parties; or
   (c) By several writings which show expressly on their faces that they refer to the same transaction, and which the parties have mutually acknowledged by conduct or agreement as evidences of the transaction.

upon the mortgagee. 59 C.J.S., *Mortgages,* p. 212, sec. 163. Any ambiguity, of course, must be resolved against the mortgagee." *Capocasa v. First National Bank of Stevens Point,* 36 Wis.2d 714, 720, 154 N.W.2d 271 (1967); *see also Badger State Agri-Credit & Realty, Inc. v. Lubahn,* 122 Wis.2d 718, 722–23, 365 N.W.2d 616 (1985). The Bank asserts that the change in the nature of the interest conveyed herein, i.e., from the note referred to in the mortgage to the obligations referenced in the cross-collateral agreements, does not invalidate the mortgage. The Committee cites two cases contradicting the Bank's position: *Healy v. Fidelity Savings Bank,* 238 Wis. 12, 298 N.W. 170 (1941), and *Estate of Dunlap,* 184 Wis. 345, 199 N.W. 387 (1924).

■ In *Healy,* the court cited Wis.Stat. § 240.06 (repealed effective July 1, 1971 and replaced by Wis.Stats. §§ 704.03 and 706.01), which provided that "No estate or interest in lands, other than leases for a term not exceeding one year ... shall be created, granted, assigned, surrendered or declared unless by act or operation of law or by deed or conveyance in writing, subscribed by the party creating ... the same...." (The current Wis.Stat. § 706.01(4) provides that "A 'conveyance' is a written instrument, evidencing a transaction governed by this chapter, which satisfies the requirements of s. 706.02.") The *Healy* court continued as follows:

In view of this provision, [Wis Stat § 240.06], "No rights in and to real property, nor trust or powers over the same, can be granted by parol." (citation omitted); and consequently, no additional mortgage lien or incumbrance on real property can be created by a subsequent parol agreement to secure other indebtedness than that which was intended to be secured when the mortgage was executed. As is stated in 19 R.C.L. p. 306, § 82,—

"But a mortgage cannot, subsequent to its execution, be extended by parol agreement to secure debts or obligations other than those which it was executed to secure. Such an extension, if effective, would be equivalent

to the execution of a new mortgage to secure the additional obligations. It, therefore, falls within the prohibition of the statute of frauds.... It is quite true that oral testimony is admissible to show what obligations were intended to be secured by a mortgage and will be received to establish that the mortgage was in fact given to secure obligations distinct from those expressed. But this doctrine permits parol testimony only to show the intention of the parties at the time the mortgage was executed and not to establish a subsequent agreement, in effect creating a new mortgage, to extend the mortgage to secure additional obligations."

To the same effect see 41 C.J. p. 468, § 371,—

"Where, however, a statute exists prohibiting the admission of proof of a verbal mortgage, it has been held that mortgages are so far *stricti juris* that they cannot be extended by any implication to secure another obligation than that expressly mentioned in the instrument;"—.

27 C.J. p. 218, § 199, 41 C.J. p. 467, § 371; and also the annotation in 70 A.L.R. p. 579, where it is stated that by the weight of authority an oral agreement for the extension of the security of a mortgage or deed of trust to cover additional indebtedness is not enforceable for any purpose.

*Healy,* 238 Wis. at 13–14, 298 N.W. 170 (citations omitted). Similarly, in *Estate of Dunlap,* the court had stated that " ... it is clearly recognized that the agreement for security for future advances must be a present part of the instrument relied upon for such security. It cannot arise by some subsequent oral agreement." *Dunlap,* 184 Wis. at 351, 199 N.W. 387. The *Healy* and *Dunlap* decisions indicate that a mortgage must be altered by written amendment if it is to secure an alternative or additional obligation. In our case, although the 1984 and 1988 collateral agreements were reduced to written form, they were never physically annexed to the mortgage, nor was the mortgage itself amended to reflect

their existence. It would therefore appear that the mortgage was extinguished when the second letter of credit expired on September 30, 1983.

The Bank argues that reliance upon the *Healy* and *Dunlap* decisions is misplaced because they pre-date Wis.Stat. § 706.09, the "notice" provision, first effective on July 1, 1968 for "qualified purchasers without notice as defined in sub. (2)." Wis.Stat. § 706.09(6). However, as has been stated, *Healy* specifically relied upon Wis.Stat. § 240.06, which was repealed effective July 1, 1971 and replaced by Wis. Stats. §§ 704.-03 and 706.01. Both Wis.Stat. § 240.06 and Wis.Stat. 706.01(4) require conveyances to be in writing, and Wis.Stat. § 706.01(4) incorporates Wis.Stat. § 706.02, thereby further requiring that the interest conveyed be identified in order for the conveyance to be valid. Because Wis.Stat. § 706.01(4), the statutory successor to Wis.Stat. § 240.06, post-dates Wis.Stat. § 706.09, the Bank's argument that this notice rule can be applied to negate reliance upon the *Healy*, depending as it did on Wis.Stat. § 240.06, is without merit.

The Bank further argues, citing Wis. Stat. § 706.09(2), that "legally adequate constructive notice existed at all times as to the Bank's claim." This provision provides:

(2) **Notice of prior claim.** A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:

(a) *Affirmative notice.* Such purchaser has affirmative notice apart from the record of the existence of such prior outstanding claim, including notice, actual or constructive, arising from such use or occupancy of the real estate by any person at the time such purchaser's interest therein arises, whether or not such use or occupancy is exclusive; but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious; or

(b) *Notice of record within 30 years.* There appears of record in the chain of title of the real estate affected, within 30 years and prior to the time at which the interest of such purchaser arises in law or equity, an instrument affording affirmative and express notice of such prior outstanding interest conforming to the requirements of definiteness of sub. (1)(b); or

(c) *Same.* The applicable provisions of sub. (1)(c) to (k) requiring that an instrument remain for a time of record, have not been fully satisfied.

■ The Bank asserts that because its mortgage was of public record at the time of the Carley bankruptcies, "notice" existed pursuant to Wis.Stat. §§ 706.09(2)(b) and (c). The Bank fails to address the fact that pursuant to Wis.Stat. § 706.09(2)(b), its mortgage must conform "to the requirements of definiteness of sub. (1)(b)." This subsection provides:

(1) **When conveyance is free of prior adverse claim.** A purchaser for a valuable consideration, without notice as defined in sub. (2), and his successors in interest, shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:

(b) *Conveyance outside chain of title not identified by definite reference.* Any conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain. No reference shall be definite which fails to specify, by direct reference to a particular place in the public land record, or, by positive statement, the nature and scope of the prior outstanding interest created or affected by such conveyance, transaction or event, the identity of the original or subsequent owner or holder of such interest, the real estate affected, and the

approximate date of such conveyance, transaction or event.

Wis.Stat. § 706.09(4) defines "chain of title" as follows:

(4) **Chain of title: definition.** The term "chain of title" as used in this section includes instruments, actions and proceedings discoverable by reasonable search of the public records and indices affecting real estate in the offices of the register of deeds and in probate and of clerks of courts of the counties in which the real estate is located; a tract index shall be deemed an index where the same is publicly maintained.

The mortgage was in the public records of the Sauk County Register of Deeds. However, the interest secured by the mortgage was stated as a $200,000.00 note, with no mention or attachment of either of the two cross-collateral agreements. There was thus no definite reference identifying the nature and the scope of the transactions pursuant to which the mortgage was to secure the obligations referred to in the cross collateral agreements. Therefore, the mortgage did not conform to the requirements of definiteness contained in Wis.Stat. § 706.09(1)(b), and the Bank has failed to establish that "notice" existed pursuant to Wis.Stat. § 706.09(2).

The Bank further asserts that "based on the recorded mortgage, a potential purchaser or lender would have contacted the Carleys or the Bank, either of which would have been able to correctly identify the Bank's interests."

11 U.S.C. § 544(a)(3) provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of the property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

"Although it is specified that the trustee is deemed not to have actual notice which would defeat its claim, other aspects of bona fide purchaser status are determined by application of the substantive law of the state in which the property is located." *In re Fitzpatrick*, 29 B.R. 701, 704 (Bankr.W. D.Wis.1983). In *In re R.C.R. Corp.*, 58 B.R. 291, 295 (Bankr.W.D.Wis.1986), this court described the bona fide purchaser doctrine as follows:

To be a purchaser in good faith a party must be without notice of pre-existing rights. The "no notice" requirement of the statute means that a party must have neither actual knowledge nor constructive notice of the rights of other parties. Constructive notice arises when a party without actual knowledge fails to exercise reasonable care to investigate sources of information which would lead to actual knowledge of the conflicting rights of others. Although the actual knowledge requirement may not be interposed against a trustee under section 544, the doctrine of constructive notice may.

*R.C.R.*, 58 B.R. at 295 (citations omitted).

*Bump v. Dahl*, 26 Wis.2d 607, 133 N.W.2d 295, *reh. denied*, 26 Wis.2d 607, 616a, 134 N.W.2d 665 (1965), states the common law version of the bona fide purchaser doctrine. It provides that "Purchasers in good faith are purchasers without notice of existing rights in land," and describes the inquiry which a purchaser should make in order to discover the rights of others in the land which he seeks to purchase:

A purchaser of land has three sources of information which he should consult to learn of rights to the land he is about to purchase: (1) The records in the office of the register of deeds where the basic rights involved are recorded; (2) other public records to discover rights which usually are not recorded in the office of the register of deeds, *i.e.*, judgments and liens; and (3) the land itself, to discover by observation the rights which arise

outside of the recording system by virtue of possession or use.

*Id.* at 613–15, 134 N.W.2d 665. Regarding the third inquiry, *Bump* states that "under the doctrine, the purchaser is charged with notice of all the rights of the possessor and of all the facts connected therewith which a reasonable inquiry of the one in possession would disclose." *Id.* In *Bump*, the defendant "needed only ask the seller or the seller's agent to point out the stakes or to attempt to find them himself" in order to determine the location of the boundaries. *Id.*, at 616, 134 N.W.2d 665. This defendant did not do. The *Bump* court determined that the plaintiff's "grading, sodding, planting, landscaping of the triangle [of land] and using it for its natural purpose" was possession sufficient to charge the defendant with constructive notice of the plaintiff's rights in the land. *Id.*

*In re Fitzpatrick,* 29 B.R. 701, involved debtors who had sold a duplex pursuant to a land contract which was not recorded until after the debtors had filed their bankruptcy petition. The land contract vendees had physically occupied the duplex until about two years prior to the debtors' filing; subsequent to their departure, the duplex had at all times been occupied by renters. The trustee sought to avoid the vendees' ownership of the duplex pursuant to 11 U.S.C. § 544(a)(3), contending that a prospective purchaser would find nothing inconsistent between the renters' possession and the debtors' record title such as to give the prospective purchaser constructive notice of the vendees' ownership.

This court, bound by *Bump v. Dahl,* rejected the trustee's contention, stating that "Mere observation of possession is not, however, what is required of a purchaser. Rather, the purchaser is under a duty to inquire of the one in possession." Because inquiry concerning the tenants' rights in the duplex would inevitably disclose the vendees' ownership thereof, this court charged the trustee with constructive notice of that ownership. Accordingly, as the trustee failed to qualify as a bona fide purchaser under Wisconsin law, his Section 544(a)(3) motion was denied.

In *Fitzpatrick,* we did not depart from *Bump's* determination that constructive notice of possession must be used to determine ownership of real estate. There is, however, no basis upon which *Bump* can be extended to require that a possessor be asked the financing arrangements of an owner of the property. Furthermore, in the present case, neither the identity nor the scope of knowledge of the person in possession of the land has been established.

■ Wis.Stat. § 706.08(1)(a) is a codification of the common law bona fide purchaser doctrine. *In re R.C.R. Corp.,* 58 B.R. at 295, citing *Bump v. Dahl,* 26 Wis.2d at 613, 133 N.W.2d 295. This section provides:

> (1)(a) Every conveyance (except patents issued by the United States or this state, or by the proper officers of either) which is not recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded.

The recording statute was addressed in *Kordecki v. Rizzo,* 106 Wis.2d 713, 719, 317 N.W.2d 479 (1982), where the court stated as follows:

> In determining rights under the recording statute, in contrast with determining rights under the common law of conveyancing, the initial question is not what the Garcias actually owned when they conveyed the property to Kordecki but what the record shows they owned. To claim the benefits of sec. 706.08(1)(a) as a purchaser in good faith, Kordecki is deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title.[2]

2. The *Kordecki* court quoted *Bump v. Dahl, supra,* as support for this proposition. It thus would appear that *Bump's* language charging a purchaser "with notice of all the rights of the possessor and of all the facts connected therewith which a reasonable inquiry of the one in possession would disclose," has not been interpreted by the Wisconsin Supreme Court to in-

*See also Badger State, supra,* 122 Wis.2d at 729, 365 N.W.2d 616. Thus under the recording statute, the scope of the inquiry is limited to "the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title."

■ In our case, only the August 8, 1979 mortgage as it was originally filed appeared in the chain of title. It referred only to one $200,000.00 note. Pursuant to Wis.Stat. § 706.08(1)(a), a bona fide purchaser's inquiry would be limited to ascertaining whether the note to which reference had been made had been paid in full. Due to the presence of the defeasance clause in the mortgage, an affirmative answer to the question would mean that ownership of the farm had reverted to the Carleys. A bona fide purchaser would have no duty to inquire if the mortgage was amended subsequently to secure any additional obligations which were neither recorded nor referred to in the chain of title. The Bank's contention that its loan officer would answer any inquiry regarding the mortgage by providing all the information relevant thereto, including that concerning the cross-collateral agreements, does not expand the constructive notice with which a good faith purchaser may be charged.

The mortgage may be avoided pursuant to 11 U.S.C. § 544(a)(3). Accordingly, the Bank's motion for turnover of proceeds from the sale of the Sauk County farm is hereby denied.

clude charging a purchaser with constructive notice of unrecorded equity interests of third-party mortgagees.