Larry KORDECKI, Plaintiff-Respondent-Petitioner,

v.

Bruno M. RIZZO, trustee, Defendant-Appellant.

Supreme Court

*No. 80–2332. Argued February 2, 1982.—Decided March 30, 1982.*

(Also reported in 317 N.W.2d 479.)

For the plaintiff-petitioner there was a brief and oral argument by *William O. Kupfer* of Kenosha.

For the defendant-appellant there was a brief by *James T. Conrad* and *Walter W. Stern, III,* both of Kenosha, and oral argument by *Mr. Conrad.*

SHIRLEY S. ABRAHAMSON, J.    This is a review of an unpublished decision of the court of appeals filed September 2, 1981, reversing a judgment of the circuit court for Kenosha county, Earl D. Morton, Circuit Judge. We affirm the decision of the court of appeals.

This court is asked to decide which of two purchasers from a common grantor acquires title to real estate. For purposes of this review, the facts are not in dispute.

In 1974 the Katts entered into a land contract as vendors with the Garcias, vendees. In 1977, the Garcias defaulted on the land contract, and the Katts brought a foreclosure action in the circuit court for Kenosha county. A lis pendens advising of the foreclosure action was filed in the office of the register of deeds for Kenosha county on June 17, 1977, pursuant to sec. 840.10 (1), Stats. 1979–80. According to the documents filed in the circuit court foreclosure action, the period of redemption ended on December 1, 1977.

Prior to December 1, 1977, Bruno M. Rizzo, Garcia's attorney, reached an agreement with Roger Mayer and Garcia by which Mayer would purchase the property from Garcia. Rizzo would take title as Trustee for Mayer, the undisclosed buyer. By November 7, 1977, Mayer paid Rizzo $17,000 in trust, and the Garcias ex-

ecuted a warranty deed to Rizzo, as Trustee. Rizzo kept the Garcias informed of Mayer's attempt to redeem the property and Mayer's willingness to lease the property to the Garcias with an option to buy. On November 30, 1977, Rizzo forwarded a check to Katts' attorney in satisfaction of the land contract. Katts' attorney informed Rizzo that an additional sum of money was needed to redeem the property and orally agreed to extend the period of redemption. By letter dated December 5, 1977, Katts' attorney advised Rizzo that the additional sum due was $83.90, and on December 8, 1977, Rizzo mailed Katts' attorney the sum of $83.90. On December 12, the Katts executed a warranty deed (Katts as grantors and Garcias as grantees) which was mailed to Rizzo on December 13. The Katts' warranty deed was received by Rizzo on December 14. Although Rizzo changed the date on the deed from the Garcias to himself as trustee to read December 12, 1977, the parties view the Garcias as having conveyed their interest in the property to Rizzo in November, 1977.

If the matter ended here there would be no lawsuit. But in early December, 1977, Garcia entered into negotiations with Kordecki to convey the property to Kordecki. Garcia told Kordecki he had legal problems with the property. Garcia and Kordecki went to the office of Kordecki's attorney; Garcia told the attorney there were legal problems surrounding the real estate. The attorney made no search of record title and acted merely as scrivener. The attorney decided to use a quit claim deed after hearing what he described as Garcia's garbled account of his problem-riddled real estate.

On December 12, 1977, Garcia executed a quit claim deed to Kordecki which deed Kordecki recorded on December 14, 1977. It was not until March 28, 1978, that Rizzo recorded the two warranty deeds, the one from the

Katts to the Garcias and the other from the Garcias to Rizzo.

Kordecki sued Rizzo to establish his claim to the real estate. The circuit court held that sec. 706.08(1)(a), Stats. 1979–80, is applicable and that as between Rizzo and Kordecki, title to the property is in Kordecki, a subsequent purchaser in good faith and for a valuable consideration whose conveyance was first duly recorded. Sec. 706.08(1)(a), Stats. 1979–80, the notice-race statute, provides as follows:

"706.08(1)(a)   Every conveyance (except patents issued by the United States or this state, or by the proper officers of either) which is not recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded."

The court of appeals reversed the circuit court, holding that both secs. 706.08(1)(a) and 706.09(1)(b), Stats. 1979–80,[1] apply; that under sec. 706.08(1)(a) Kordecki

---

[1] "706.09   Notice of conveyance from the record. (1) WHEN CONVEYANCE IS FREE OF PRIOR ADVERSE CLAIM. A purchaser for a valuable consideration, without notice as defined in sub. (2), and his successors in interest, shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:
"...
"(b) *Conveyance outside chain of title not identified by definite reference.* Any conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain. No reference shall be definite which fails to specify, by direct reference to a particular place in the public land record, or, by positive statement, the nature and scope of the prior outstanding interest created or affected by such conveyance, transaction or event, the identity of the original or subsequent owner or holder of such

loses because he did not purchase from a person appearing in the record chain of title;[2] and that under sec. 706.09(1)(b) Kordecki loses because his claim depends on a transaction not appearing in the record chain of title.[3]

interest, the real estate affected, and the approximate date of such conveyance, transaction or event."

[2] We do not agree with the intimation in the court of appeals opinion that a vendee under a land contract is not a person in the chain of title. A land contract is clearly a conveyance in the chain of title. Chain of title is defined in sec. 706.09(4), Stats. 1979–80, as follows:

"The term 'chain of title' as used in this section includes instruments, actions and proceedings discoverable by reasonable search of the public records and indices affecting real estate in the offices of the register of deeds and in probate and of clerks of courts of the counties in which the real estate is located; a tract index shall be deemed as index where the same is publicly maintained."

The test to determine whether an instrument is in the chain of title is whether the instrument could have been discovered by reasonable search of the record. Anyone examining the record in the office of the register of deeds for Kenosha county in the case at bar would find the executed and recorded land contract from the Katts to the Garcias.

It appears that what the court of appeals may have meant in its reference to the land contract not being in the chain of title is that it fell out of the chain of title when the redemption period expired and there was nothing in the record stating that the property had been redeemed. This may at first appear like a semantical difference at best in this case but it should be clear for the future that a land contract may be a transaction properly within the chain of title and that a land contract vendee may be a person in the chain of title.

[3] There is a serious question whether sec. 706.09(1)(b) is applicable in the case at bar to protect Rizzo. Sec. 706.09(1)(b) appears to be a curative provision to solve the indefinite reference problem, that is a conveyance outside the record chain of title not identified by a definite reference in an instrument of record in the chain of title. This case does not involve an "indefinite reference" problem. The language of sec. 706.09(1)(b) appears to extend beyond the limited curative purpose, and there has been

We conclude, as did the court of appeals, that Kordecki's claim cannot prevail, but we arrive at this conclusion by a different route.

The Garcias are the common grantors of the two competing grantees. The Garcias conveyed their interest in the property to Rizzo as trustee in November, 1977. Thereafter, the Garcias conveyed their interest in the property to Kordecki. Under the law of conveyancing (without considering the recording statute), because Garcia had already passed title to Rizzo as trustee, Garcia could convey no interest to Kordecki and Kordecki could acquire no interest in the land under the quit claim deed. Hence under the law of conveyancing, Rizzo takes priority over Kordecki. Sec. 706.08(1), Stats. 1979–80, quoted above, is a notice-race recording statute and changes the common law of conveyancing. When we consider the recording statute, we must recognize that since Rizzo did not record the Garcias' deed to him, Rizzo's title is subject to defenses existing by reason of his failure to record. Kordecki recorded his deed before Rizzo recorded his.

The recording statute is designed (1) to force the recording of all instruments so that the record will show a complete history of the title and (2) to protect purchasers who rely on the record and purchase in good faith and for value over those who have not recorded their interest in the real estate thereby possibly misleading others.[4] In other words, the purpose of the recording

---

some discussion by the commentators that the broad language in sec. 706.09(1)(b) makes the relation of sec. 706.09(1)(b) and sec. 706.08(1) ambiguous. *See* Note, *Real Estate in Title Legislation—Merchantability of Title*, 1968 Wis. L. Rev. 937, 944–945. In any event, we need not reach the question as the court of appeals did whether sec. 706.09(1)(b) is applicable to aid Rizzo.

[4] "The purpose of the recording act is to protect the purchaser of an outstanding estate from him who appears to be the owner

statute is to render record title authoritative to protect a purchaser who relies on the record and is a purchaser in good faith and for a valuable consideration.

In determining rights under the recording statute, in contrast with determining rights under the common law of conveyancing, the initial question is not what the Garcias actually owned when they conveyed the property to Kordecki but what the record shows they owned. To claim the benefits of sec. 706.08(1)(a) as a purchaser in good faith, Kordecki is deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title.[5] A purchaser in good faith is one without notice,

thereof according to the public records." *Thauer v. Smith,* 213 Wis. 91, 96, 250 N.W. 842 (1933).

For a discussion of the recording statutes, *see* Rundell, *Recording of Deeds in Wisconsin,* 1 Wis. L. Rev. 340 (1920–22); Stevens, *Conveyancing,* 1945 Wis. L. Rev. 630; Van Alstyne, *Land Transfer and Recording in Wisconsin: A Partial History,* 1955 Wis. L. Rev. 44, 223; Professor Rundell's Commentary to ch. 235, 27 West's Wis. Stats. Annot., pp. 285–87 (1957); Philbrick, *Limits of Record Search and Therefore of Notice,* 93 U. Pa. L. Rev. 125 (1944); Jones, *The New Jersey Recording Act—A Study of Its Policy,* 12 Rutgers L. Rev. 328, 329 (1958).

[5] "A purchaser of land has three sources of information which he should consult to learn of rights to the land he is about to purchase: (1) The records in the office of the register of deeds where the basic rights involved are recorded; (2) other public records to discover rights which usually are not recorded in the office of the register of deeds, *i.e.,* judgments and liens; and (3) the land itself, to discover by observation the rights which arise outside of the recording system by virtue of possession or use. On the problem generally, see Van Alstyne, *Land Transfer and Recording in Wisconsin,* 1955 Wisconsin Law Review, p. 223. Under the recording acts a conclusive presumption arises that a purchaser knows every conveyance of property recorded which affects the title to the property, whether or not the purchaser examines the public records. *Kidder v. Pueschner* (1933), 211 Wis.

constructive or actual, of a prior conveyance. *Fallass v. Pierce*, 30 Wis. 443, 469 (1872).

Had Kordecki examined the record, which he did not, he would have found the lis pendens which would have led him to the Kenosha county circuit court file on the proceedings to foreclose the land contract and more specifically to the documents terminating the period of redemption on December 1, 1977. Sec. 840.10, Stats. 1979–80, states that from the time of filing of the lis pendens "every purchaser whose conveyance . . . is not recorded or filed shall be deemed a subsequent purchaser . . . and shall be bound by the proceedings in the action to the same extent and in the same manner as if he were a party thereto." Thus Kordecki is viewed as having constructive notice from the recorded instruments that Garcia had no power to sell the property on December 12, 1977, that there may be unrecorded conveyances and that the proffered deed might be a nullity. Despite Rizzo's failure to record, the record gave Kordecki notice of defects of his grantor's title and the possibility of unrecorded conveyances.

Kordecki agrees that he is charged with notice of the recorded instruments, that the record necessitated that he make inquiry, and that he is charged with notice of those facts which would have been discovered by a reasonable inquiry. Professor Rundell explains the notice imparted from the record as follows:

"Constructive notice is based . . . upon the assumption that the person affected with such notice should as a reasonably prudent person have acquired knowledge sufficient to give him 'actual notice.' In other words in the

---

19, 247 N.W. 315; *Fallass v. Pierce* (1872), 30 Wis. 443." *Bump v. Dahl*, 26 Wis. 2d 607, 615, 133 N.W.2d 295, 134 N.W.2d 665 (1965).

*See also* sec. 706.09(2), Stats. 1979–80, which describes notice of a prior claim.

case of the subsequent purchasers the law has imposed upon them a certain standard of care which they must at their peril observe." Rundell, *Recording of Deeds in Wisconsin,* 1 Wis. L. Rev. 340, 353 (1920–22).

Kordecki argues, however, that he cannot be charged with notice of Garcia's defective title and any prior unrecorded conveyance because had he examined record title and then made inquiry about the foreclosure action, he would have discovered from Katts' attorney that the period of redemption had been extended and that the Katts were going to execute a warranty deed to the Garcias. Thus Kordecki argues that inquiry would have shown that Garcia's record title, although facially defective, was not in reality defective. Kordecki's scenario of the inquiry overlooks the fact that on inquiry Kordecki, as a reasonably prudent person making inquiry, would also have learned in speaking to Katts' attorney that Attorney Rizzo was handling Garcia's interest in the real estate, that Garcia had, for all intents and purposes, redeemed the property, that Katts' attorney's picture of Garcia having good title did not fit Garcia's characterization to Kordecki and Kordecki's attorney of Garcia's interest in the property being encumbered and subject to foreclosure; and that he (Kordecki) should communicate with Attorney Rizzo. We conclude under the facts of the case at bar that, as a matter of law, Kordecki had notice of the transactions between Katts' attorney and Rizzo and between Rizzo, Garcia and Mayer. Thus Kordecki is not a subsequent purchaser in good faith protected by sec. 706.08(1)(a).

Because Kordecki cannot claim sanctuary under the notice-race recording statute, we affirm the decision of the court of appeals.

*By the Court.*—Decision of the court of appeals affirmed.