Donald W. PELFRESNE,
Plaintiff–Appellant,

v.

VILLAGE OF WILLIAMS BAY, et al.,
Defendants–Appellees.

No. 89–3060.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1990.

Decided Nov. 8, 1990.

Rehearing Denied Jan. 17, 1991.

Leonard S. Shifflett, Michael F. Csar, Burke, Wilson & McIlvaine, Celeste Cinquino, Righeimer, Martin & Cinquino, Chicago, Ill., for plaintiff-appellant.

Richard R. Grant, Louis Gage, Consigny, Andrews, Hemming & Grant, Janesville, Wis., for defendants-appellees.

Before WOOD, Jr., POSNER, and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

The district court dismissed Donald Pelfresne's suit against a municipality and a number of its officials and employees as barred by the Anti–Injunction Act, 28 U.S.C. § 2283, and then refused to allow him to amend his complaint. The appeal presents interesting questions, rarely encountered in a federal court, of property law.

In November 1984 the Village of Williams Bay in Walworth County, Wisconsin brought suit in the Circuit Court of Walworth County against Michael Schiessle. The suit sought a court order to raze four single-family houses located on property owned by Schiessle in Williams Bay that were in disrepair and believed to be unsafe. The Village filed a notice of lis pendens (pending litigation) in the Walworth County registry of deeds.

The next month, December 1984, Schiessle conveyed the property to Lommen Eley and John Koch to hold in trust for him, whereupon the Village named Eley and Koch as additional defendants in its suit. The suit was dismissed in July of the following year (1985) on technical grounds

and promptly refiled, but no new notice of lis pendens was filed. In February 1986 Eley and Koch conveyed the property to Anita Catania, but the conveyance was not recorded.

On June 25, 1986, judgment was entered for the Village in the refiled suit. The judgment ordered the buildings razed and also awarded the Village damages and costs totaling $629.42. The clerk of the circuit court, pursuant to statute, prepared the judgment docket card that appears at the end of this opinion. Wis.Stat. § 806.10(1). The card notes the damages and costs but not the raze order.

In September 1987, months after the judgment in the circuit court action had become final upon the exhaustion of the defendants' appellate remedies, both the release of the notice of lis pendens in the first suit (the one that had been dismissed) and the deed to Catania were recorded in the Walworth County registry of deeds, along with another deed from Catania, this one made in either 1986 or 1987 (the record is unclear which) to Allen Veren. Schiessle continued as the beneficial owner.

The day after these instruments were recorded, Pelfresne bought the property for $60,000 and ten days later he brought this suit, basing federal jurisdiction on diversity of citizenship. (He is a citizen of Michigan, while all the defendants are citizens of Wisconsin.) The suit depicts him as a bona fide purchaser for value who under Wisconsin law was not bound by the raze order contained in the judgment that had been entered against Schiessle, Eley, and Koch in June 1986. He sought a preliminary injunction against the Village's carrying out the raze order. This was denied on a variety of grounds, including the unlikelihood that Pelfresne could establish that the enforcement of the order would violate his rights under Wisconsin law.

We affirmed the denial of the preliminary injunction, 865 F.2d 877 (7th Cir.1989), but remarked that regardless of the merits of Pelfresne's claim as they might ultimately be determined at trial, the district court might lack jurisdiction to enjoin the raze order, whether preliminarily or permanent-

ly. The Anti–Injunction Act forbids a federal court to enjoin state court proceedings and the prohibition has been interpreted to bar an injunction against the enforcement of a judgment obtained in such proceedings, even though such an injunction is directed not against the state court itself but against the victorious party in state court proceedings, who is trying to enforce the judgment he obtained. *Id.* at 880 n. 1. We therefore instructed the district judge to determine the applicability of the Act before he considered the merits of Pelfresne's claim.

He did so, held that the Act indeed barred an injunction, and therefore dismissed the complaint, because the only relief Pelfresne had sought was an injunction against the raze order. The judge refused to let Pelfresne amend his complaint to charge that the raze order was unconstitutional and to seek damages, as well as an injunction, in order to remedy the constitutional violation. Having thus shut the last door on Pelfresne's hopes, the judge dismissed the entire suit.

The main purpose of the Anti–Injunction Act is to avoid the affront to comity (the mutual respect of sovereigns) that would be entailed if a court of one sovereign, namely a federal court, attempted to enjoin proceedings in the court of another sovereign, namely a state court. The affront would be greatest if the injunction was addressed to the court itself, commanding it to stay its hand, rather than to the parties, commanding them to stay their hands. Yet even in 1793, when the Anti–Injunction Act was first passed, injunctions of the former type were rare. Comment, *Federal Court Stays of State Court Proceedings: A Re-examination of Original Congressional Intent,* 38 U.Chi.L.Rev. 612, 615 n. 24 (1971). And as their objective could and was obtained simply by enjoining the parties to the litigation from proceeding with their case, had the Act been confined to injunctions addressed to courts or judges, as its language could be read to suggest, it would have had no force. So one is not surprised that it has never been interpreted literally. It has been extended by interpre-

tation first to cover the situation in which an injunction is sought against a party to a pending state-court proceeding, *Atlantic Coast Line R.R. v. Brotherhood of Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970), and then to cover the situation of a disappointed litigant who, having lost in state court, seeks the aid of a federal court to nullify the state court proceeding, not by enjoining the proceeding as such or even by enjoining the parties from continuing with the proceeding—it is too late for either of these remedies—but by enjoining his opponent from enforcing the judgment that the opponent had obtained in the proceeding. *County of Imperial v. Munoz*, 449 U.S. 54, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980).

■ However, a stranger to the state court litigation—hence one who cannot be regarded as a litigant in state court, disappointed or otherwise—is not barred. He is not trying to interfere with a state court proceeding in progress, or to rerun his state lawsuit in federal court. He is merely trying to vindicate his rights against a party who obtained a judgment in state court. If he were barred, it would be as if he had been a class member in a state court suit against a defendant class. Hart and Wechler's The Federal Courts and the Federal System 1330 (Bator *et al.* eds. 1988). Or so it can be argued. The counterargument is that the stranger's suit in federal court is as great an affront to the state court as a federal court suit by a party; if the stranger can raise his federal claims only in state court, that is too bad for him but he is in the same boat as many other litigants.

■ The Supreme Court has resolved this debate. Only a party, or, what amounts to the same thing in contemplation of the law, one who is in privity with a party, is barred by the Anti–Injunction Act. *County of Imperial v. Munoz, supra*, 449 U.S. at 59, 60 n. 3, 101 S.Ct. at 292, 293 n. 3; *Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 377–78, 59 S.Ct. 526, 526–27, 83 L.Ed. 771 (1939).

The question of privity is central to this case. Pelfresne concedes that if the raze order issued by the Circuit Court of Walworth County is a lien on the property that he bought, then he is in privity with the defendants in the circuit court action. He further concedes that it is a lien on the property enforceable against him if he knew about the raze order when he bought the property, or if, though he did not know about it, he is treated by Wisconsin law as if he did: in legalese, if he had "constructive notice" of the order.

He may well have had actual notice. Schiessle has been the beneficial owner of the property throughout the elaborate series of transfers that preceded the sale to Pelfresne and that appear to have been motivated by a desire to escape the raze order, and Pelfresne is Schiessle's nephew. Either they are in cahoots or the uncle has tried to pull a fast one on his nephew; the fact that Pelfresne brought this suit to enjoin the raze order just ten days after he bought the property supports the former hypothesis. But there has been no finding of actual notice as yet, so we proceed to the question of constructive notice.

At first glance "constructive notice" may seem another of those unworthy legal fictions that contribute to the law's poor reputation among laymen. It means no notice, and its purpose and effect may therefore seem to be to pretend that a person who did not know something did know it. In fact, however, it is a mainstay of the system of protecting interests, both prior and subsequent, in land by means of a system of public records. One who records his interest in the proper records office is thereby protected against subsequent claimants and need not attempt to publicize that interest in any other way, and he is also protected against any prior claimants who by failing to record their interests had failed to provide notice in the prescribed manner.

■ But was the Village's raze order properly recorded? It was if it was within the "chain of title" of the property, a term that "includes instruments, actions and proceedings discoverable by reasonable search of the public records and indices affecting real estate in the offices of the register of

deeds and in probate and of clerks of courts in the counties in which the real estate is located." Wis.Stat. § 706.09(4). A purchaser of real estate has constructive notice of a prior interest if "there appears of record in the chain of title of the real estate affected ... an instrument affording affirmative and express notice of such prior outstanding interest conforming to the requirements of definiteness of sub. (1)(b)." § 706.09(2)(b). We go to subsection (1)(b) to discover those requirements and read there that "any conveyance, transaction or event not appearing of record in the chain" does not place a purchaser on constructive notice unless the conveyance, etc. "is identified by definite reference in an instrument of record in such chain" and that to be definite the reference must specify "the nature and scope of the prior outstanding interest created." In other words, even an instrument that appears in the chain of title will place a subsequent purchaser on notice of an interest created by that instrument only if it specifies the interest's nature and scope.

If the instrument in Pelfresne's chain of title is the judgment in the circuit court action, then since the judgment includes the raze order, the requirement of definite reference is satisfied and Pelfresne loses. That is what the district judge thought. If on the other hand the instrument is the judgment docket card, then Pelfresne's hand is greatly (though, as we shall see, not necessarily decisively) strengthened, for the card contains no definite reference—no reference, period—to the raze order.

■ To be in the chain of title, an instrument must, according to the passage from section 706.09(4) quoted earlier, be one "affecting real estate." So we must decide whether it is the judgment or the judgment docket that affects real estate, i.e., that creates a lien. We think it is the latter. Every judgment that is "properly docketed" creates, under Wisconsin law, a lien against real estate owned by the person or persons against whom the judgment is entered. Wis.Stat. § 806.15(1). The Wisconsin courts take this specification literally:

no docket, no lien. *Wisconsin Mortgage & Security Co. v. Kriesel,* 191 Wis. 602, 211 N.W. 795 (1927). "[P]roperly docketed" means written up on a judgment docket card that is entered, alphabetically by the name of the defendant, in the judgment docket, in effect an index of judgments. Wis.Stat. § 806.10(1). The card in this case was filed in triplicate, one card under the name of each of the three defendants in the Village's suit, and the card mentions no raze order. The judgment entering that order therefore was not docketed; did not create a lien, other than for $629.42, the monetary part of the judgment, which *was* entered on the card; therefore did not (with the same qualification) affect real estate; therefore (again with the same qualification) was not in the chain of title of Pelfresne's predecessors in title. *Burner v. Wille,* 30 Wis.2d 658, 141 N.W.2d 895 (1966).

■ This may seem a cruel blow to the interests of creditors. It is not. The Village, the judgment creditor, could have filed the judgment containing the raze order in the registry of deeds. "[E]very conveyance, and every other instrument which affects title to land in this state, shall be entitled to record in the office of the register of deeds of each county in which land affected thereby may lie." Wis.Stat. § 706.05(1). "[I]nstrument which affects title to land" is broadly construed. It includes equitable as well as legal judgments. *Cutler v. James,* 64 Wis. 173, 24 N.W. 874 (1885). Although we can find no previous case involving raze orders, we think it must also include an equitable judgment that, in ordering the demolition of buildings, affected the defendants' title to the property that included those buildings. Surely the statutory term "land" includes the buildings on it, though this too is a question on which we find no cases.

The clincher is Wis.Stat. § 66.05(8)(b), the statute under which the raze order was issued. It provides (in subsection (8)(b)(3)) that the order binds subsequent owners "if a lis pendens was filed before the change of ownership." This implies that a raze order creates an interest affecting land,

and hence extinguishes the rights of subsequent purchasers, even if bona fide, provided it is properly recorded. No doubt this is why in its initial suit the Village filed a notice of lis pendens with the register of deeds. Once that suit was over, the notice was properly removed. The Village neglected to file a notice of lis pendens in the refiled suit; had it done so, then perhaps after it obtained the judgment it would, as it should, have replaced the notice of lis pendens with the judgment.

The fact that the docket card contains no space for an equitable judgment is telling. Such judgments, which affect the land directly, should be filed with the register of deeds. The clerk's docket is designed for money judgments, which merely by virtue of being entered and properly docketed become liens against any land that the defendant should happen to own; because of that automaticity, the filing of a mere money judgment in the registry of deeds would clog that registry with paper unnecessarily.

■ This may seem to conclude the case triumphantly for Pelfresne. Not so. Remember what section 706.09(2)(b) says: the purchaser takes subject to any interest of which he has "affirmative and express notice" from an instrument in the chain of title. The recording system is for the protection of purchasers (including creditors) who are "bona fide" in the sense not only of purity of heart but also of some minimum degree of carefulness. The docket card showing the money judgment against Pelfresne's predecessors was an instrument in the chain of title, and the language of "affirmative and express notice" has been held not to extinguish the traditional duty of "reasonable inquiry." *Kordecki v. Rizzo*, 106 Wis.2d 713, 719–21, 317 N.W.2d 479, 483 (1982). Anyone searching title on Pelfresne's behalf would first have gone to the registry of deeds and there found, in the file for the property that Pelfresne wanted to buy, the identity of the previous owners, including Schiessle, the equitable or beneficial owner, and Eley and Koch, two in a string of holders of the legal title. The next step, a step required by the statutory definition of chain of title as including

instruments recorded in the office of the clerk of the circuit court for the county in which the property is located, was to look up these names in the judgment docket card file of the clerk's office. There one would have found—and there Pelfresne's title searcher, who had already found the deed to Eley and Koch in the registry of deeds, did in fact find—the card for the Village's judgment. Although the judgment was for a small amount of money, the fact that it was entered jointly against three recent owners of the land that Pelfresne was buying should have set the alarm bells to ringing. Almost certainly it was a judgment arising out of their ownership.

■ The duty of reasonable inquiry is a function in part of the burden of inquiry. It would have been a matter of minutes for Pelfresne's title searcher to look up the judgment and find the raze order in it. Especially when we consider the personal relationship between Pelfresne and Schiessle, the indications that Pelfresne was on inquiry notice of the raze order are very strong, and that is notice enough as we have seen to put him in the chain of title from the defendants in the Village's suit. A finding of inquiry notice, however, like other assessments of reasonableness, is one of fact. *Cooter & Gell v. Hartmarx Corp.*, ── U.S. ──, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990); *Mucha v. King*, 792 F.2d 602, 605 (7th Cir.1986); *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1126 (5th Cir.1978). It is therefore one for the district judge (not us) to make. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). He did not do so here because he thought, incorrectly as it seems to us, that the judgment itself was in the chain of title. Despite strong language in *Icicle* suggesting, as Justice Stevens pointed out in dissent, that an appellate court may never make a finding of fact, we assume that if the record permits only one inference the appellate court need not remand to the district court for the entry of that finding. But this is not—quite—such a case. *Kungys v. United States*, 485 U.S. 759, 775 n. 10, 108 S.Ct. 1537, 1548 n. 10, 99 L.Ed.2d

839 (1988). We shall therefore remand for a determination of whether Pelfresne was on inquiry notice. Also open on remand of course is whether he had actual notice.

When it began to look as if the Anti–Injunction Act would bar this suit, Pelfresne sought leave to amend his complaint to add counts under 42 U.S.C. § 1983 challenging on federal constitutional grounds the statute (Wis.Stat. § 66.05) under which the raze order had been issued, raising certain other constitutional claims as well, and seeking damages for the constitutional violations as well as an injunction. The judge denied the motion, saying only that "In light of the court's decision to dismiss this action, the court will deny Pelfresne's motion to amend." There are three things wrong with this ground for denying Pelfresne's motion. First, it is not true, as the statement implies, that a complaint can never be amended after the judge has decided to dismiss the suit kicked off by the complaint sought to be amended; in fact, a common reason, in no wise improper, for seeking to amend a complaint is to cure an infirmity thought fatal by the district judge in the existing complaint. *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266–67 (7th Cir.1978). Second, the Anti–Injunction Act is not a bar to suits under section 1983. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). And third, it is not a bar to a suit for damages.

But if the district court's reasoning was faulty, his result was not, and this for two independent reasons. Pelfresne's claim for damages is premature, because, despite our affirmance of the denial of his motion for a preliminary injunction the last time this case was before us, the raze order has not yet been carried out. And his challenge to the statute underlying the raze order is frivolous (his other constitutional challenges are even more clearly frivolous, and require no discussion). The defendants point out that the constitutionality of that statute has been upheld by both this court and Wisconsin's supreme court. *Baker v. Mueller*, 222 F.2d 180 (7th Cir.1955); *City of Appleton v. Brunschweiler*, 52 Wis.2d 303, 190 N.W.2d 545 (1971). Pelfresne replies only that "defendants' arguments that plaintiff's Constitutional claims are barred by prior precedent requires [*sic*] this Court to shut its eyes to the developments concerning due process and equal protection rights which have emanated from this Court and the United States Supreme Court since the federal court's [*sic*] last visited the Wisconsin demolition statute some thirty-five years ago [citing *Baker v. Mueller, supra*]." What developments? Pelfresne does not say. He cites no cases, and presents no other ground for our reexamining our decision in *Baker*. A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. *Bob Willow Motors, Inc. v. General Motors Corp.*, 872 F.2d 788, 795 (7th Cir. 1989); Fed.R.App.P. 28(a)(4). We will not do his research for him. *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986).

As Pelfresne has offered no reason to doubt that a challenge to the constitutionality of the Wisconsin statute should be considered barred by *stare decisis*, the motion for leave to file an amended complaint was properly denied. Nevertheless the case must be remanded for a determination of whether Pelfresne was on either actual notice or inquiry notice, and for such other proceedings as may be consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

## APPENDIX

## THE JUDGMENT DOCKET CARD