**2021 WI App 48**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2020AP600

Complete Title of Case:

THE LAKES OF VILLE DU PARC CONDOMINIUM ASSOCIATION, INC.,

    PLAINTIFF-RESPONDENT,

    V.

CITY OF MEQUON AND CPG MEQUON LLC C/O THE CORPORATION TRUST COMPANY,

    DEFENDANTS,

TLW INVESTMENTS, LLC D/B/A RIVER CLUB OF MEQUON AND THOMAS WEICKARDT,

    DEFENDANTS-APPELLANTS.

| | |
|---|---|
| Opinion Filed: | June 30, 2021 |
| Oral Argument: | May 17, 2021 |

| | |
|---|---|
| JUDGES: | Reilly, P.J., Gundrum and Davis, JJ. |
|     Concurred: | |
|     Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Joseph M. Wirth and Amanda E. Melrood* of *Schmidt & Wirth Law Offices*, Milwaukee. There was oral argument by *Joseph M. Wirth*. |

Respondent
ATTORNEYS: On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Dash* of *Carlson Dash, LLC*, Pleasant Prairie. There was oral argument by *James M. Dash*.

<table>
<tr>
<td>

**COURT OF APPEALS<br>DECISION<br>DATED AND FILED**

**June 30, 2021**

Sheila T. Reiff<br>Clerk of Court of Appeals

</td>
<td>

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

</td>
</tr>
</table>

**Appeal No.   2020AP600**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016CV83

**IN COURT OF APPEALS**

---

THE LAKES OF VILLE DU PARC CONDOMINIUM ASSOCIATION, INC.,

   PLAINTIFF-RESPONDENT,

V.

CITY OF MEQUON AND CPG MEQUON LLC C/O THE CORPORATION TRUST COMPANY,

   DEFENDANTS,

TLW INVESTMENTS, LLC D/B/A RIVER CLUB OF MEQUON AND THOMAS WEICKARDT,

   DEFENDANTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Ozaukee County: JOSEPH W. VOILAND, Judge. *Affirmed*.

Before Reilly, P.J., Gundrum and Davis, JJ.

¶1      DAVIS, J.   This case involves open land, currently in a natural state, that was sold by the same seller twice.  The seller is no longer in the picture, so the two buyers (or, more precisely, their successors and/or representatives[1]) are left to wage this battle over the question of ownership.  The Lakes of Ville Du Parc Condominium Association, Inc. (the Association) claims title on behalf of its members by virtue of a condominium declaration (Declaration) and survey map, prepared and recorded under WIS. STAT. §§ 703.07 and 703.09 (2019-20)[2] and designating the land as an "outlot" and part of the condominium "common elements."  Thomas Weickardt purchased the land many years later without (he claims) notice of the Association's interest.

¶2      As the prior purchaser, the Association would ordinarily prevail as a matter of course, so long as its interest was recorded first—which it was, in 1984 and 1985, shortly after the Declaration and an amendment were prepared.  Here, however, things are a bit more complicated—after the Declaration was recorded (and long before the sale to Weickardt), the developer prepared and recorded a new survey map and caused the land to be recorded in the plat index under separate parcel identification numbers (PINs).  The developer then purported to exercise a right it had under the Declaration to use a portion of the land to expand the adjoining country club's golf course and, in that event, convey the land back to itself from the

_____

[1] Plaintiff-Respondent The Lakes of Ville Du Parc Condominium Association, Inc., a condominium association, sued in a representative capacity on behalf of its members:  unit owners who, it claims, own undivided interests in the land.  Defendant-Appellant Thomas Weickardt is a subsequent purchaser of the land.  Weickardt is a manager and sole member of Defendant-Appellant TLW Investments, LLC (TLW).  As Weickardt and not TLW is listed on the deeds, we are unclear what TLW's role was in the transaction or why it is a party to this suit.  We need not decide this issue; it is sufficient for our purposes to treat Weickardt and TLW as the same entity.  Before the Association sued, Weickardt sold the land to the City of Mequon.  We will address below the impact of that sale on Weickardt's right to appeal.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

unit owners, through a power of attorney. Later on, the developer included the entire parcel as part of a sale of the country club. Weickardt purchased the country club (and the open land) after that, then sold just the open land to the City of Mequon. Weickardt claims that he was the rightful owner at the time of his sale to the City because a search of the plat index did not reveal the Association's interest.

¶3 The circuit court ruled in favor of the Association, reasoning that in the absence of a so-called "removal instrument" as authorized by WIS. STAT. § 703.28, which would take the land outside the application of WIS. STAT. ch. 703, there were no grounds on which a subsequent purchaser could take condominium property over the Association's interest. We agree with the circuit court's ruling in favor of the Association, but for a different reason: despite being given a separate PIN, the Association's interest was discoverable through a "reasonable search" and therefore was in the chain of title. *See* WIS. STAT. § 706.09(4). As a result, Weickardt was put on record notice of the Association's ownership claim, and his interest is subordinate to the Association's. Accordingly, we affirm.

## BACKGROUND

### *Relevant Facts*

¶4 In 1979 and 1984, Robert Chamberlain, acting through a corporation called Ville du Parc Country Club, Inc. (VDPCC) acquired Ozaukee County land that later became the Ville du Parc Country Club and an adjoining condominium, The Lakes of Ville du Parc. For ease of understanding, the condominium property was color coded—the portion of the condominium containing the planned units became known as the green parcel; the three parcels in dispute the orange, yellow, and pink parcels. They are depicted graphically as follows:

3

356195  1607  VOL **12** PAGE **66**

1 OF 9

CERTIFIED SURVEY MAP NO. _____

BEING A REDIVISION OF THAT PART OF THE NW 1/4, NE 1/4, SW 1/4 AND THE SE 1/4 OF SECTION 18, T 9 N, R 22 E, ALSO PARCEL 4 OF TRACT 5 IN CERTIFIED SURVEY MAP RECORDED AS DOCUMENT NO. 191048, AND THOSE PARTS OF GOVERNMENT LOTS 5, 6, 7 AND 8 ALL BEING PART OF SECTION 18, T 9 N, R 22 E, IN THE CITY OF MEQUON, OZAUKEE COUNTY, WISCONSIN.



VICINITY MAP
SECTION 18, T. 9 N., R. 22 E.

NOTE:
1) SHEET-1 VICINITY MAP
2) SHEET-2 OVERALL MAP
3) SHEET-3 DETAIL SHEET FOR LOTS 1, 2 AND 3
4) SHEET-4 CURVE DATA
5) SHEET-5 EASEMENT PARTITIONS (OPEN AREA) OF OUTLOT-1
6) SHEET-6 FORCE MAIN EASEMENT (DETAIL) AND AFFIDAVITS
7) SHEETS 7, 8 AND 9 AFFIDAVITS

APPROVED

DEC 17 1984

MEQUON PLANNING COMMISSION

¶5 The condominium was the subject of a detailed declaration (Declaration) which was drafted and, in 1984, recorded pursuant to Wisconsin's Condominium Ownership Act, WIS. STAT. ch. 703. A survey map was also recorded. At the time of initial recording, Lots 1, 2, and 3, and the orange and pink portions of Outlot 1 were allocated as common elements of the condominium. A year later, the yellow portion of Outlot 1 was added to the condominium as a common area via amendment.

¶6 The three parcels at issue in this case—the orange, yellow, and pink parcels—are described in the Declaration as being part of the condominium's "Common Elements," a defined term meaning, in pertinent part, "the common areas and facilities consisting of the land and the entire premises" *other than* the condominium units. The Declaration provides that each unit owner possesses an undivided interest in the common elements as tenant-in-common with all other unit owners, and has certain rights to use the parcels. An exception to ownership concerns the pink parcel, which the Declaration states VDPCC "may use … for expansion of the Ville du Parc Country Club golf course." "[I]n the event the land described … is used" for such expansion, the land may be conveyed back to VDPCC by deeds that VDPCC is authorized to execute as attorney-in-fact on behalf of each of the unit owners.

¶7 In 1987, for reasons unknown, VDPCC arranged to have a new Certified Survey Map (CSM) prepared, which relocated and reconfigured Lot 1 and combined the orange, yellow, and pink parcels into a new "Outlot 1A." Showing VDPCC as the purported "owner" of the parcel, with himself as "president," Chamberlain recorded the CSM with the Ozaukee County Register of Deeds. It

appears that the orange, yellow, and pink parcels were assigned separate PINs.[3] This seemingly contravened the Condominium Ownership Act, which expressly forbids separation of the "common elements" of a condominium from individual units. *See* WIS. STAT. § 703.21(1) ("[e]very unit and its percentage of undivided interest in the common elements shall be deemed to be a parcel" and "[n]either the building, the property nor any of the common elements shall be deemed to be a parcel separate from the unit").

¶8 In 1993, Chamberlain sought to exercise the option in the Declaration to deed the pink parcel to VDPCC by executing quitclaim deeds on behalf of all then-existing unit owners. Recall, however, that this option was authorized only in the event the land was used to expand the country club's golf course—and there is no evidence that any such expansion had occurred by that point, or anytime since for that matter. In any case, the unit owners were apparently aware of the transfer to VDPCC but understood that any subsequent transfer would come with the golf course restriction. They claim not to have known of any subsequent transfers until 2015.

¶9 In 2006, VDPCC, now known as Mequon Country Club, Inc., conveyed the entirety of the surrounding country club and other property to an entity called CPG Mequon, LLC (CPG), which was part of a national real estate development company (The Carlyle Group, located in Washington, D.C.). The conveyance purported to include the orange, yellow, and pink parcels—even though VDPCC had no legal interest in the orange and yellow parcels, nor any interest in the pink parcel except as expressly permitted in the event of the golf course

---

[3] The record is unclear as to exactly when these parcels were assigned separate PINs, but this point is immaterial for the purpose of this appeal.

expansion, which never occurred. Five years later, CPG conveyed the same property—with the exception of the pink parcel, which was expressly carved out by reference to the 1993 quitclaim deed—to Weickardt. In June 2014, Weickardt acquired the pink parcel as well, by quitclaim deed; two days later, he conveyed the orange, yellow, and pink parcels to the City of Mequon.

¶10     There is conflicting evidence as to whether Weickardt or the City was aware, or should have been aware, of any ongoing use of the property that would have put them on notice of the Association's ownership rights. Weickardt acknowledges being aware of some activity on the property, but states that he believed this was due to an open air easement. The Association submitted evidence that it maintained the property through mowing and the like and, later, erected "no trespassing" signs on at least the orange and yellow parcels, which the City removed upon its acquisition in 2015.

¶11     The record reflects that Chamberlain Designs, LTD, CPG, Weickardt, and the City paid taxes on the three parcels during their ownership tenures from 2000 to 2015; the record is silent as to who paid taxes before 2000.

*Procedural History*

¶12     The Association brought an action to quiet title to the orange, yellow, and pink parcels. In addition to Weickardt, the Association named as defendants the City (the purported current owner of the property) and CPG. There has been no discovery. Instead the parties filed competing summary judgment motions based on affidavits that were largely confined to the conveyance documents. Following extensive briefing and argument, the circuit court ruled that the Association retained title to the orange, yellow, and pink parcels. The circuit court's ruling was based on the notion that there had been no "removal instrument" filed under WIS. STAT.

§ 703.28 that would have taken the parcels outside the ambit of the Condominium Ownership Act.[4]  As a result of this ruling, the circuit court dismissed Weickardt, while leaving the City as a party on one of the remaining claims.  The City later dismissed that claim, which terminated the litigation as to it.  The City has not appealed any part of the circuit court's order and is not a party on appeal.

¶13     In reviewing this matter, we determined that it would be of assistance to have the parties identify what each considered the chain of title for the orange, yellow, and pink parcels, and we ordered that such be filed, either separately or, if the parties could agree, as a joint submission.  The parties filed a joint submission

---

[4] WISCONSIN STAT. § 703.28 reads:

**703.28     Removal from provisions of this chapter**.

(**1**)   All of the unit owners may remove all or any part of the property from the provisions of this chapter by a removal instrument, duly recorded, provided that the holders of all liens affecting any of the units consent thereto or agree, in either case by instruments duly recorded, that their liens be transferred to the percentage of the undivided interest of the unit owner in the property.

(**1m**)

(**a**)   If the merger of 2 or more condominiums under [WIS. STAT. §] 703.275 would result in the creation of a new plat for the resultant condominium, the property of the preexisting condominiums shall first be removed from the provisions of this chapter by recording a removal instrument.

(**b**)     Before a certified survey map, condominium plat, subdivision plat or other plat may be recorded and filed for the same property, the condominium shall first be removed from the provisions of this chapter by recording a removal instrument.

(**2**)   Upon removal of any property from this chapter, the property shall be deemed to be owned in common by the unit owners.  The undivided interest in the property owned in common which appertains to each unit owner shall be the percentage of undivided interest previously owned by the owner in the common elements.

containing what we understand to be an agreed-upon chain of title and that filing, along with oral argument ably presented by counsel, has been helpful to this court's understanding of the issues. Further facts will be as noted in the Discussion section below.

## DISCUSSION

### *Standard of Review*

¶14 This is a review of a circuit court decision rendered on summary judgment. Consequently, our review is de novo, and we owe no deference to the circuit court. *Yahnke v. Carson*, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102. The Association and the City filed cross-motions for summary judgment as to the ownership of the pink parcel, which we treat as a joint stipulation of facts permitting us to decide the legal question of ownership. *See Millen v. Thomas*, 201 Wis. 2d 675, 682-83, 550 N.W.2d 134 (Ct. App. 1996). In evaluating the Association's motion with respect to the remaining parcels, we ask whether there is a genuine issue of material fact that precludes judgment as a matter of law. *See* WIS. STAT. § 802.08(2).

### *This Appeal Is Not Moot and Weickardt Is an Aggrieved Party*

¶15 Before turning to the merits, we must address what we construe as the Association's two-fold argument on Weickardt's right to appeal. The Association points out that as of its suit, the City was the sole putative owner of the parcels, Weickardt having been named a defendant only because his ownership interests were initially unclear. The Association argues that, accordingly, our decision on the merits would not affect Weickardt's interests or rights, and this appeal is moot. *See Marathon County v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901

(mootness is a doctrine of judicial restraint, under which we may decline to review an issue where our decision would have no practical effect on a live controversy). Relatedly, the Association argues, Weickardt is not an "aggrieved party"—a prerequisite for appeal—because the circuit court's order does not affect his interests. *See Weina v. Atlantic Mut. Ins. Co.*, 177 Wis. 2d 341, 345, 501 N.W.2d 465 (Ct. App. 1993) (a party may not appeal from a judgment unless aggrieved, meaning the judgment "bears directly and injuriously upon his or her interests" or "adversely affect[s] [the person] in some appreciable manner"). In the Association's view, the City is the only proper party to bring this appeal.

¶16    The Association's argument, whether expressed as a matter of this court's power or jurisdiction, fails for the same reason: the appealed-from judgment exposes Weickardt to potential contribution liability to the City, based on his breach of contract in the parcel's sale. Indeed, the City already brought cross-claims against Weickardt to this effect, which were dismissed, but without prejudice. This circumstance establishes Weickardt's aggrieved-party status. *See Koller v. Liberty Mut. Ins. Co.*, 190 Wis. 2d 263, 266-69, 526 N.W.2d 799 (Ct. App. 1994) (party may be aggrieved for purposes of appeal even where there were no direct claims against it; the question is whether the judgment was adverse to a substantial interest). Along similar lines, this case is not moot: our decision will have the practical effect of permitting or foreclosing the City's claims against Weickardt. *See D.K.*, 390 Wis. 2d 50, ¶19.

¶17    The Association appears to further argue that we cannot decide this appeal as to Weickardt because the City—the only purported current property owner—has not appealed. This argument, expressed somewhat inaccurately in terms of res judicata, seems to be that the City is not a party to this appeal; so we therefore cannot reverse any judgment as to the City; so we therefore cannot decide

Weickardt's appeal, as any reversal would not bind the City. The implication, perhaps, is that we would be deciding an appeal without any practical significance; essentially, this is a mootness argument. This argument is curious, since a reversal *is* binding on parties who did not join in the appeal where, as here, "their rights and liabilities and those of [appellant] are so interwoven and dependent as to be inseparable." *See Newhouse v. Citizens Sec. Mut. Ins. Co.*, 170 Wis. 2d 456, 467, 489 N.W.2d 639 (Ct. App. 1992) (citation and emphasis omitted), *rev'd in part on other grounds sub nom. Newhouse by Skow v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 842, 501 N.W.2d 1 (1993). Our decision, as a practical matter, may "effectually dispose[] of any liability on the part of the" City. *See Newhouse*, 170 Wis. 2d at 468. Therefore, although it may have been preferable for the City to have participated in this appeal, it was not necessary.

*Weickardt Was on Inquiry Notice of the Association's Adverse Claim By Virtue of the Declaration's Being in the Chain of Title*

¶18    Weickardt argues that this case is controlled by WIS. STAT. § 706.09, which allows one who purchases property for value, "without notice" of certain adverse interests, to take the property free of those interests. The Association argues that we never reach § 706.09, however, because the Condominium Ownership Act, and specifically WIS. STAT. § 703.28, legally prevents condominium property from being severed from the condominium in the absence of a duly recorded "removal instrument." Much of the briefing has focused on how these two provisions should be reconciled, but we see no need to reach or resolve this question.[5]    Instead, this case can be decided on a more fundamental point:  the Association's interest is

---

[5]  WISCONSIN STAT. § 703.28 allows "all of the unit owners" to remove property from "the provisions of [WIS. STAT. ch. 703] by a removal instrument." The parties dispute whether this language bars a subsequent purchaser for value and without notice of condominium unit owners' interest from taking the property over the unit owners' interest.

within the property's chain of title. This means that subsequent purchasers such as Weickardt and the City had notice of that interest, and § 706.09 does not apply.

¶19 We can start with the obvious point that it is impossible for an owner of property to validly convey that property twice. In such a circumstance, only one of the conveyances can be given effect. At common law, it was the earlier of the two conveyances that was recognized as controlling on the issue of title—the idea being that once the property was conveyed, there was no property for the former owner to convey a second time. ***Kordecki v. Rizzo***, 106 Wis. 2d 713, 718, 317 N.W.2d 479 (1982). That left the subsequent purchaser with only a claim—most likely for fraud—against the twice-selling prior owner.

¶20 So-called race-notice recording statutes, effective in roughly half of states, changed the common law.[6] Under the statutory scheme, a buyer who purchases property for value without notice of a prior purchaser's unrecorded interest, and who records that conveyance first, has priority over any later recordings. WIS. STAT. § 706.08(1). Moreover, there are circumstances in which a subsequent purchaser may take property free of adverse claims even outside the straightforward situation of the prior purchaser's failure to record. These circumstances are spelled out in WIS. STAT. § 706.09(1)(a)-(k). As relevant here, that statute provides:

> **(1)** WHEN CONVEYANCE IS FREE OF PRIOR ADVERSE
> CLAIM. A purchaser for a valuable consideration, without
> notice as defined in sub. (2), and the purchaser's successors

---

[6] All states have altered the common law with some form of recording statute. The majority, including Wisconsin, have "race-notice recording" statutes whereby a later purchaser who records first has priority so long as the later purchaser does not have notice of the prior interest. Other states give priority to a later purchaser who does not have notice even if the prior purchaser later records its interest, and a handful of states have "race" statutes which give priority to the party who records first, without regard to notice. *See generally* Charles Szypszak, *Real Estate Records, the Captive Public, and Opportunities for the Public Good*, 43 GONZ. L. REV. 5, 24-30 (2007).

in interest, shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:

….

**(b)** C*onveyance outside chain of title not identified by definite reference.* Any conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain. No reference shall be definite which fails to specify, by direct reference to a particular place in the public land record, or, by positive statement, the nature and scope of the prior outstanding interest created or affected by such conveyance, transaction or event, the identity of the original or subsequent owner or holder of such interest, the real estate affected, and the approximate date of such conveyance, transaction or event.

….

**(f)** *Lack of authority of officers, agents or fiduciaries.* Any defect or insufficiency in authorization of any purported officer, partner, manager, agent, or fiduciary to act in the name or on behalf of any corporation, partnership, limited liability company, principal, trust, estate, minor, individual adjudicated incompetent, or other holder of an interest in real estate purported to be conveyed in a representative capacity, after the conveyance has appeared of record for 5 years.

….

**(h)** *Nonexistence, incapacity or incompetency.* Nonexistence, acts in excess of legal powers or legal incapacity or incompetency of any purported person or legal entity, whether natural or artificial, foreign or domestic, provided the recorded conveyance or instrument affecting the real estate shall purport to have been duly executed by such purported person or legal entity, and shall have appeared of record for 5 years.

Sec. 706.09(1).

¶21 Weickardt seeks to invoke one or more of three circumstances, quoted above as WIS. STAT. § 706.09(1)(b), (f), and (h), in which a subsequent purchaser takes over a prior interest. For our purposes, however, the key language is the prefatory clause, which permits the application of paras. (a) through (k) *only* by a purchaser who takes the property "without notice as defined in [§ 706.09(2)]." Subsection (2), in relevant part, states:

> **(2)** NOTICE OF PRIOR CLAIM. A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:
>
> ….
>
> **(b)** *Notice of record within 30 years.* There appears of record in the chain of title of the real estate affected, within 30 years and prior to the time at which the interest of such purchaser arises in law or equity, an instrument affording affirmative and express notice of such prior outstanding interest conforming to the requirements of definiteness of [para.] (1)(b) ….

*Id.*

¶22 Here, the orange, yellow, and pink parcels were, through the Declaration, conveyed to the Association (or, to be more precise, its unit owners in undivided interests). Aside from the 1993 quitclaim conveyance, there is nothing of record to suggest that the Association relinquished that interest. As for the 1993 quitclaim deed, no one claims that VDPCC had the unfettered right to convey title to the three parcels to itself, through an attorney-in-fact or otherwise, and rightly so—the pink parcel was the only parcel that VDPCC had authority from the Association to convey at all, and even that parcel could *only* be conveyed in the event it was used to expand the country club's golf course. As no expansion had occurred, VDPCC lacked authority to act on the unit owners' behalf even with

14

respect to the pink parcel. That lack of authority essentially means that the Association retained ownership of the three parcels; any subsequent conveyance by VDPCC was a sale of land it did not own. As a subsequent purchaser, Weickardt (or the City) could make a claim of superior title over the Association under one of the provisions of WIS. STAT. § 706.09 *only* if Weickardt (or the City) met the portion of the statute dealing with notice, constructive or actual, on the part of the subsequent purchaser. More specifically, any subsequent purchaser, whether it be Weickardt or the City, cannot prevail if within thirty years of the conveyance there is an instrument in the chain of title that, in conformance with the definiteness requirement, affords affirmative and express notice of the Association's interest. *See* § 706.09(2)(b) (setting forth the thirty-year requirement, and incorporating the definiteness requirement of para. (1)(b)).

¶23    We can easily dispense with the requirement that there exist "an instrument affording affirmative and express notice of such prior outstanding interest conforming to the requirements of definiteness of [WIS. STAT. § 706.09](1)(b)." *See* § 706.09(2)(b). The Declaration is plainly such an instrument, in that it contains a "definite reference" to the property at issue, including by legal description and plat map. Also easily addressed is the requirement that such notice appear of record "within 30 years" and "prior to the time at which" the competing interests arose. The Declaration was recorded in December 1984; Weickardt's interest was acquired twenty-seven years later, in 2011; and the City's interest was acquired in June 2014, just within the thirty-year period.

¶24    This leaves the question of whether the Declaration, which indisputably shows the Association's ownership interest, was within the property's "chain of title." Helpfully, "chain of title" is a defined term:

15

> CHAIN OF TITLE: DEFINITION. The term "chain of title" as used in this section includes instruments, actions and proceedings discoverable by reasonable search of the public records and indexes affecting real estate in the offices of the register of deeds and in probate and of clerks of courts of the counties in which the real estate is located; a tract index shall be deemed an index where the same is publicly maintained.

WIS. STAT. § 706.09(4).

¶25 From this definition, we can narrow the inquiry to whether a subsequent purchaser's "reasonable search" would result in discovery of the Association's conflicting interest in the three parcels, as shown in the Declaration. We conclude, as a matter of law, that it would. Weickardt argues that the assignment of separate PINs for the orange, yellow, and pink parcels prevented such a discovery—as if a reasonable search would simply show these parcels as independently-owned pieces of raw land next to, but unconnected with, a condominium—but that argument does not hold together on this record. There is no dispute that Weickardt was aware of the 1993 quitclaim deed, purporting to convey the pink parcel to VDPCC.[7] The 1993 quitclaim deed on its face expressly references the Declaration—and says exactly how to find it—stating that VDPCC was acting as the "ATTORNEY IN FACT for grantors pursuant to Section 4(b) of DECLARATION OF CONDOMINIUM OWNERSHIP OF THE LAKES OF VILLE DU PARC, dated December 21, 1984, and recorded in the Office of the Register of Deeds for Ozaukee County, Wisconsin in Volume 520 at Pages 593 through 631, as Document No. 356196."

---

[7] Weickardt does not state what type of search was conducted, or what it revealed, other than that his title commitment listed the 1993 quitclaim deed as an exception (and listed a similar exception for a 1997 quitclaim deed which does not appear to be in the record). This exception in the title commitment may be why the pink parcel was initially carved out of the listing of parcels that Weickardt purchased in 2011; in any event, it is evident that the 1993 quitclaim deed was in the chain of title.

¶26 Review of the Declaration (as amended) would have enlightened any would-be purchaser of the orange, yellow, and pink parcels as to the fact that the Association still had an undivided ownership interest in at least the orange and yellow parcels. Certainly, the 1993 quitclaim deed could not legally have conveyed *those* parcels, and by all appearances did not purport to do so—the legal description in the 1993 quitclaim deed relates only to the pink parcel. As for the pink parcel, the Declaration provides VDPCC the authority to transfer it only in the event the land had been used to expand the golf course.[8] That the golf course had not been "expanded" could have been easily confirmed, if it was not self-evident from observation. That information was more than enough to put a cloud on the title, precluding reliance on any of the circumstances, set forth in WIS. STAT. § 706.09, in which a subsequent purchaser can take title over a prior adverse interest.

¶27 The record does not reflect what type of title search was actually performed in this case. We do not know, for example, whether the search was limited to the plat index, or whether it also included review of the grantor/grantee index, and we need not decide whether a reasonable search must always include

---

[8] We disagree with any notion that this language allowed VDPCC to convey the property before such use occurred, or at least initiated. Rather, the Declaration plainly states that such use is permitted, and "in the event" of such use, each unit owner consents to conveyance of the pink parcel to the developer, at which point it presumably would be considered property of the adjoining country club, and owned by VDPCC.

17

both.[9]  What we *do* conclude is that a reasonable search would have revealed the Declaration, at a minimum, because of the express reference to it in the 1993 quitclaim deed.  *See* ***Kordecki***, 106 Wis. 2d at 719 (subsequent purchaser "deemed to have … notice of the contents of all instruments in the chain of title and of the contents of instruments *referred to in an instrument in the chain of title*") (emphasis added)).

¶28    In fact, that the Declaration is in the chain of title appears to be conceded, given its inclusion in the parties' jointly submitted supplemental appendix of chain-of-title documents.  At oral argument, however, Weickardt's counsel suggested that Weickardt took clean title because the 1993 quitclaim deed "terminated" the Association's prior interest, meaning, presumably, that it is simply irrelevant that the Declaration is in the chain of title.  But that argument assumes that the 1993 quitclaim deed validly conveyed the property free and clear of the Association's interest—when we have already determined that it did not—and misconstrues the purpose of a title search, which is to determine title defects that might have arisen at any point in the property's history so long as such defects could potentially impair marketable title.

---

[9] The Association argues that a "reasonable search" must include a search of the grantor/grantee index, citing ***Bank of New York Mellon Trust Co. v. Wittman***, No. 12–C–846, 2013 WL 173801 (E.D. Wis. Jan. 16, 2013), a federal case interpreting Wisconsin law.  A federal bankruptcy decision, ***In re Wenzel***, 554 B.R. 861 (Bankr. W.D. Wis. 2016), is to similar effect. These decisions provide persuasive reasons to conclude that a reasonable title search would typically include review of the grantor/grantee index.  We are not inclined to definitively address this point, however, because the Association submitted no evidence showing whether or how such a search would have revealed its interest.  Litigants in title disputes involving chain of title issues should make a factual record of what a reasonable search would reveal in the relevant jurisdiction, here Ozaukee County.  *Cf.* ***Bank of New York***, 2013 WL 173801, at *4 (noting that expert testimony was provided to the effect that "it is common practice for title companies performing title searches in Calumet County to search both the grantor/grantee index and the tract index for documents affecting title"); ***In re Wenzel***, 554 B.R. at 863 (attorney's screen shot showing results of grantor/grantee search used to support "factual contention" of what such a search would reveal).

¶29 Our analysis departs from the circuit court's reasoning to the extent that the circuit court ruled that the lack of a WIS. STAT. § 703.28 removal instrument was per se fatal to Weickardt's claim. Nonetheless, our analysis is bolstered by the lack of such an instrument and what that may *communicate* to any subsequent purchaser with notice that property has previously been subjected to condominium ownership. A removal instrument was necessary to legally take the property outside application of WIS. STAT ch. 703. And, under ch. 703, no part of the "common elements" may be deemed a parcel separate from the units. *See* WIS. STAT. § 703.21(1) ("Neither the building, the property nor any of the common elements shall be deemed to be a parcel separate from the unit."). Any subsequent purchaser *who was aware of the Declaration* must be charged with knowledge of these matters, and therefore be deemed to know that the 1993 quitclaim deed was not a valid conveyance for that reason as well. Put another way, even if the parcel *had* been used to expand the golf course, which it was not, the 1993 quitclaim deed's express reference to and description of the Declaration was sufficient to put any subsequent purchaser on notice that the conveyance was from condominium unit owners, and therefore improper in the absence of a removal instrument. That means such a purchaser is not "without notice" of a conflicting interest under WIS. STAT. § 706.09(2)(b).

¶30 In short, the 1993 conveyance exceeded VDPCC's authority to act as attorney-in-fact for the Association's unit owners in conveying their interests, meaning those interests were not, in fact, "terminated." *See **Lucareli v. Lucareli***, 2000 WI App 133, ¶¶12-15, 237 Wis. 2d 487, 614 N.W.2d 60 (conveyance by attorney-in-fact outside scope of authority is void). The resulting cloud on title that existed at the time of Weickardt's 2011 purchase was readily discoverable by a reasonable search. A reasonable search would have entailed review of the 1993

quitclaim deed, which, in turn, would have disclosed the Declaration showing creation of the Association's interest in the three parcels.[10]  From review of those documents and existing law, one would be aware that VDPCC was without the authority in 1993 to cause the Association to convey anything other than the pink parcel—and even that parcel only if the golf course had been expanded, *and* only if there were a removal instrument allowing severance of the land into a separate parcel.  As a result, at the time of his respective purchase, Weickardt must be deemed to have had record notice of the Association's interest.  Accordingly, Weickardt cannot now invoke the protection afforded purchasers for value over certain existing interests under WIS. STAT. § 706.09.

*By the Court.*—Order affirmed.

---

[10]  The result here might potentially have been different if the 1993 quitclaim deed had not contained a reference to the Declaration.  In that event, Weickardt could have argued that the validity or priority of the Association's claim depended on the lack of authority by VDPCC to convey the property to CPG and on the fact that the conveyance to CPG had been of record for over five years.  *See* WIS. STAT. § 706.09(f).  We would have then been called upon to decide if a separate reference to the property in a plat index, which includes no reference to a condominium, conferred on Weickardt the status of being a purchaser for value and without notice, which would require us to address, among other issues, whether a reasonable search would include review of the grantor/grantee index.  *See supra* note 6.  We would have also been called upon to decide whether (as the circuit court appeared to find) the lack of a removal instrument took the case out of the race-notice statutory scheme of WIS. STAT. ch. 706 altogether.  We do not have occasion to reach these issues in light of our conclusion that the Declaration was discoverable from even a cursory examination of the 1993 quitclaim deed, which indisputably was known to Weickardt (and presumably was referenced in the plat index), and therefore within the chain of title.  Indeed, the 1993 quitclaim deed was initially listed as an exception in the title commitment issued to Weickardt in 2011, meaning that the title insurer expressly declined to insure good title to the pink parcel. That parcel was accordingly carved out of the initial sale to Weickardt, before being added by an amended quitclaim deed three years later, just prior to Weickardt's sale of the property to the City. While not necessary to our analysis, we parenthetically note that ultimately, according to Weickardt's counsel at oral argument, no title policy was issued at all.

20